**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GROK LINES, INC., individually and on behalf of all others similarly situated, | ) ) ) | Case No. 14-cv-8033 |
| Plaintiff, | ) ) | Hon. Edmond E. Chang |
| v. | ) ) | Hon. Sidney Schenkier |
| PASCHALL TRUCK LINES, INC., a Kentucky corporation, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MOTION FOR**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

<u>Submitted by:</u>

Ismael T. Salam
*isalam@siprut.com*
**SIPRUT** PC
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

***Counsel for Plaintiff***
***and the Proposed Settlement Class***

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT ........................................................................................................................5

I.  THE PROPOSED SETTLEMENT ..........................................................................5

    A.  Certification Of The Proposed Class ..........................................................5

    B.  Class Relief ................................................................................................5

    C.  Class Notice ...............................................................................................5

    D.  Incentive Award To Class Representative ...................................................7

    E.  Attorneys' Fees And Expenses ...................................................................7

II.  THE PROPOSED SETTLEMENT IS FAIR
    AND SHOULD BE PRELIMINARILY APPROVED ...............................................8

    A.  Strength Of The Case .................................................................................8

    B.  The Risk, Expense, & Complexity Of The Case ..........................................11

    C.  The Opinion Of Counsel .............................................................................11

    D.  The Extent Of Discovery ...........................................................................12

    E.  The Presence Of Governmental Participants ................................................13

III.  THE SETTLEMENT CLASS SHOULD
    BE PROVISIONALLY CERTIFIED; THE FORM
    AND METHOD OF NOTICE TO THE CLASS MEMBERS
    SHOULD BE APPROVED; AND, A HEARING REGARDING
    FINAL APPROVAL OF THE SETTLEMENT SHOULD BE SCHEDULED .........13

    A.  The Class Should Be Provisionally Certified ..................................................13

        1.  Numerosity – F.R.C.P. 23(a) .................................................14

        2.  Commonality/Predominance – F.R.C.P. 23(a)(2) and 23(b)(3) ..............15

        3.  Typicality – F.R.C.P. 23(a)(3) .................................................17

        4.  Adequacy Of Representation – F.R.C.P. 23(a)(4)....................................18

        5.  Superiority – F.R.C.P. 23(b)(3) .............................................19

    B.  The Form And Method Of Service Of Class Notice Should Be Approved.....19

    C.  The Court Should Schedule A Hearing For Final Settlement Approval .........21

CONCLUSION ....................................................................................................................22

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591, 620 (1997) ............................................................. 13, 14, 19

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156, 173 (1974) ....................................................................... 20

*Nicaj v. Shoe Carnival, Inc.*,
135 S. Ct. 1429, 191 L. Ed. 2d 366 (2015) ................................................ 7

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541, 2551 (2011) ................................................................ 15

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) .................................................................. 8

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*,
747 F.3d 489 (7th Cir. 2014) ................................................................ 14

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) ................................................................ 16

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) ................................................................ 19

*Donovan v. Estate of Fitzsimmons*,
778 F.2d 298 (7th Cir. 1985) ................................................................ 10

*in re Corrugated Container Antitrust Litigation*,
643 F.2d 195 (5th Cir. 1981) ................................................................ 12

*Ira Holtzman, C.P.A. v. Turza*,
728 F.3d 682 (7th Cir. 2013) ........................................................... 16, 17

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) .................................................................. 8

*Marcial v. Coronet Ins. Co.*,
880 F.2d 954 (7th Cir. 1989) ................................................................ 14

*Patterson v. Gen. Motors Corp.*,

631 F.2d 476 (7th Cir. 1980) ...................................................................................... 15

*Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014) ...................................................................................... 7

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) .................................................................................... 15

*Swanson v. Am. Consumer Indus., Inc.*,
415 F.2d 1326 (7th Cir. 1969) .................................................................................... 15

*Szabo v. Bridgeport Machines, Inc.*,
249 F.3d 672 (7th Cir. 2001) ...................................................................................... 14

*Williams v. Chartwell Fin. Serv., Ltd.*,
204 F.3d 748 (7th Cir. 2000) ...................................................................................... 13

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ................................................................................. 8, 9

## UNITED STATES DISTRICT COURT CASES

*A & L Indus., Inc. v. P. Cipollini, Inc.*,
No. 12–07598 (SRC), 2014 WL 906180 (D.N.J. Mar. 7, 2014).................................. 21

*Able Home Health, LLC and Dr. G. Neil Garrett DDS, PC v. Globe Med.-Surgical Supply Co.*,
12-cv-5608, Dkt. 90 (N.D. Ill.) .................................................................................... 21

*Able Home Health, LLC v. Healthy Advice Commc'ns., Inc.*,
12-cv-3019, Dkt. 60 (N.D. Ill.) .................................................................................... 21

*AL And PO Corp. v. Quality Medical Products, LLC*,
Case No. 14-cv-1243, Dkt. 66 (N.D. Ill.) ................................................................... 21

*C.E. Design, Ltd. v. King Supply Co., LLC*,
No. 09 C 2057, 2012 WL 2976909 (N.D. Ill. July 20, 2012) ...................................... 21

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*,
No. 11–2658 (JBS/KMW), 2014 WL 413533 (D.N.J. Feb. 3, 2014) ........................... 21

*Dr. William P. Gress v. Northwood, Inc.*,
12-cv-7278, Dkt. 38 (N.D. Ill.) .................................................................................... 21

*Dr. William P. Gress v. Premier Healthcare Exchange West, Inc.*,
Case Nos. 14-cv-501, 14-cv-2177, Dkt. 80 (N.D. Ill.) ................................................ 21

*Fletcher v. ZLB Behring LLC*,
245 F.R.D. 328 (N.D. Ill. 2006) ........................................................................................... 16

*Friedman v. Torchmark Corp.*,
No. 12–CV–2837–IEG (BGS)*, 2013 WL 1629084 (S.D. Cal. Apr. 16, 2013) ............................ 9

*Gehrich v. Chase Bank USA, N.A.*,
No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) ...................................... 10, 11, 12, 15

*Gomez v. Ill. State Bd. of Educ.*,
117 F.R.D. 394 (N.D. Ill. 1987) ........................................................................................... 18

*Hinman v. M & M Rental Ctr., Inc.*,
545 F. Supp. 2d 802 (N.D. Ill. 2008) ................................................................................... 18

*In re AT&T Mobility Wireless Data Services Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ....................................................................................... 9, 10

*In re Neopharm, Inc. Secs. Litig.*,
225 F.R.D. 563 (N.D. Ill. 2004) ........................................................................................... 17

*Kessler v. Am. Resorts Int'l*,
No. 05 C 5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ...................................................... 8

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015) ....................................................................................... 10, 11

*Lutz Appellate Servs., Inc. v. Curry*,
859 F. Supp. 180 (E.D. Pa.1994) ........................................................................................... 9

*Maxwell v. Arrow Fin. Servs., LLC*,
No. 03 C 1995, 2004 WL 719278 (N.D. Ill. Mar. 31, 2004) ...................................................... 14

*NB. Indus. v. Wells Fargo & Co.*,
No. C 10–03203 LB, 2010 WL 4939970 (N.D. Cal. Nov. 30, 2010) ............................................ 9

*Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc.*,
526 F. Supp. 2d 851 (N.D. Ill. 2007) ..................................................................................... 9

*Physician's Healthsource, Inc. v. MulitPlan Servs. Corp.*,
No. 12–11693–GAO, 2013 WL 5299134 (D. Mass. Sept. 18, 2013) ............................................ 9

*Pope v. Harvard Banchares, Inc.*,
240 F.R.D. 383 (N.D. Ill. 2006) ........................................................................................... 15

*Radmanovich v. Combined Ins. Co. of Am.*,

216 F.R.D. 424 (N.D. Ill. 2003) ............................................................................. 17

*Richard Wade Architects, P.C. v. Eng'g. Servs. and Prods. Co.*,
11-cv-9251, Dkt. 58 (N.D. Ill.) ............................................................................ 21

*Scholes v. Stone, McGuire, & Benjamin*,
143 F.R.D. 181 (N.D. Ill. 1992) ........................................................................... 15

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .............................................................. 11, 12

*Smith v. Nike Retail Servs., Inc.*,
234 F.R.D. 648 (N.D. Ill. 2006) ........................................................................... 14

*Vandervort v. Balboa Capital Corp.*,
8 F. Supp. 3d 1200 (C.D. Cal. Mar. 27, 2014) ..................................................... 21

*Whitten v. ARS Nat'l Servs. Inc.*,
No. 00 C 6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) .............................. 16

*Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*,
12-cv-780, Dkt. 73 (N.D. Ill.) ............................................................................. 21

## STATUTES AND FEDERAL RULES

28 U.S.C. § 1715 ............................................................................................... 6, 13

47 U.S.C. § 227 .................................................................................................... 1, 9

Fed. R. Civ. P. 23 ............................................................................................ *passim*

## OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION (Fourth) ................................................. 12, 13, 21

## **EXHIBIT LIST**

Settlement Agreement..................................................................................................1

Declaration Of Ismael T. Salam..................................................................................2

Pursuant to Fed. R. Civ. P. 23, Plaintiff Grok Lines, Inc. ("Plaintiff"), by its counsel, respectfully submits the following Motion For Preliminary Approval Of Class Action Settlement, and moves for an Order: (1) preliminarily approving the Agreement[1] as being fair, reasonable, and adequate; (2) preliminarily approving the form, manner, and content of the Class Notice; (3) setting the date and time of the Final Approval for no earlier than 180 days from the date preliminary approval is granted; (4) provisionally certifying the proposed Settlement Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only (the "Class"); (5) provisionally appointing Plaintiff as representative of the Class; and (6) provisionally appointing Ismael T. Salam and Siprut PC as Class Counsel.

## INTRODUCTION

Pursuant to this Court's recommendation (Dkt. No. 57 at 29), Plaintiff and Defendant Paschall Truck Lines, Inc. ("PTL") (collectively, the "Parties") have entered into an Agreement in the above-referenced matter. The Agreement—a product of discovery and extensive negotiations over the course of several months—settles the dispute relating to Plaintiff's allegation that PTL sent unsolicited facsimiles to Plaintiff and the Class in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

The cornerstone of the Settlement is the substantial, concrete monetary relief it provides for Class Members. The relief achieved by the Settlement is an "all-in," non-reversionary, common fund in the amount of $100,000—cash (the "Settlement Fund"). All Class Members who submit an Approved Claim will be paid cash out of the Settlement Fund. Class Counsel estimates that if 5% of the Settlement Class submit valid and timely claim forms, each such Settlement Class Member will receive approximately $1,159. The Settlement Administration

---

[1] Unless otherwise stated herein, capitalized terms shall have the same meaning as provided in the Parties' Settlement Agreement, attached hereto as Exhibit 1.

Expenses, attorneys' Fee Award, and Plaintiff's Incentive Award will be deducted from the Settlement Fund prior to the *pro rata* payments to the Class Members. The Settlement also provides that the best practicable notice be provided to Class Members, and calls for the designation of a reputable and competent professional Settlement Administrator to disseminate notice of and administer the Settlement.

This result is best appreciated in light of PTL's asserted defense that the fax complained of is not an "advertisement" within the meaning of the TCPA. Plaintiff remains confident that, if litigation were to continue, it could prove as a matter of law that the fax is an advertisement. Nevertheless, Plaintiff recognizes the risk to it and, more importantly, the Class if Plaintiff were unsuccessful.

In sum, although both sides believe their respective positions in the action are meritorious, they have concluded that, due to the uncertainties and expense of protracted litigation, it is in the best interest of Plaintiff, the putative Class, and PTL to resolve this action on the terms provided in the attached Agreement. Accordingly, and for reasons further detailed below, Plaintiff and Class Counsel request that this Court enter an order preliminary approving this Settlement.

## **BACKGROUND**

On October 15, 2014, Plaintiff brought a putative class action against PTL in the United States District Court for the Northern District of Illinois, case number 1:14-cv-08033, alleging causes of action against PTL for purportedly sending unsolicited fax advertisements to unwilling participants with deficient opt-out notices. (Dkt. No. 1.)

On November 12, 2014, PTL moved to dismiss Plaintiff's Complaint for failure to state a claim under the TCPA and failure to state a common-law conversion claim. (Dkt. No. 12.) On November 17, 2014, the Court issued an order granting in part, and denying in part PTL's

Motion. The Court dismissed Plaintiff's conversion claim, but allowed Plaintiff to proceed with its claims under the TCPA. (Dkt. No. 16.)

On November 24, 2014, PTL filed its Answer to Plaintiff's Complaint, denying that PTL had violated either the TCPA or common law. PTL also raised several affirmative defenses, including failure to state a claim, violation of Due Process of Law under the United States Constitution, and equitable estoppel. (Dkt. No. 17.)

On December 1, 2014, the Court ordered that the Parties make their Rule 26(a)(1) disclosures by December 15, 2014 and issue their first round of discovery requests by January 5, 2015. (Dkt. No. 23.) On December 15, 2014, each Party made its Rule 26(a)(1) disclosures. (Declaration Of Ismael T. Salam ("Salam Decl."), attached hereto as Exhibit 2, ¶6.) Also on December 15, 2014, Plaintiff also filed a motion to strike each of PTL's affirmative defenses. (Dkt. No. 24.) On December 19, 2015, the Court denied Plaintiff's motion to strike without prejudice. (Dkt. No. 26.)

On December 19, 2015, PTL served its First Set Of Requests For Admission on Plaintiff. (Salam Decl. ¶7.) On January 5, 2015, Plaintiff served its First Set Of Interrogatories, First Set Of Requests For Admission, and First Set Of Requests For Production on PTL. (*Id.*) On January 15, 2015, Plaintiff responded to PTL's Requests For Admission. (*Id.*)

In January 2015, the Parties discussed a proposed amendment to PTL's Answer to cure alleged deficiencies with PTL's affirmative defenses. (*Id.* ¶8.) On January 20, 2015, PTL filed its Amended Answer and Affirmative Defenses, denying that PTL had violated the TCPA. (*Id.*) Also on January 20, 2015, the Parties held a Local Rule 37.2 conference to discuss Plaintiff's written responses to PTL's Requests For Admission. (*Id.*) Following the conference, Plaintiff amended its responses. (*Id.*)

Between February and May 2015, the Parties engaged in substantive negotiations on whether this matter could be resolved on a class-wide basis. (*Id.* ¶9.) PTL represented that the class size was approximately 200. PTL, however, did not have records showing exactly to whom faxes were sent and, hence, could not objectively show whether the class size was some number greater than 200. In the same vein, PTL continues to assert that a class cannot be certified on a *contested* basis because there is no proof of exactly who received a fax. After being unable to agree on all material terms of a settlement under a Rule 23(b)(2) framework, the Parties held a settlement conference with Magistrate Judge Sidney Schenkier. (Dkt. No. 34.)

After the Parties finalized that settlement, on June 27, 2015, Plaintiff moved for court approval. (Dkt. No. 42.) On September 18, 2015, this Court denied approval of that settlement, but instructed the Parties to craft a new agreement under Rule 23(b)(3). (Dkt. No. 57 at 24.)

Class Counsel engaged in numerous discussions with PTL's Counsel to structure a notice plan consistent with Rule 23(b)(3). (Salam Decl. ¶11.) Plaintiff also gathered information regarding the potential recipients of PTL's faxes. Consistent with PTL's prior representation, Sam Royalty, one of PTL's former employees, stated that he sent faxes to approximately 180 individuals or entities. (Ex. 1, Ex. C thereto.) PTL's records, however, are not clear. After comparing PTL's transmission logs from AT&T, the database from Carrier411 Services, Inc. ("Carrier411"), and the criteria from Sam Royalty, Plaintiff determined that potentially 893 individuals or entities were sent at least one fax. (Salam Decl. ¶¶11-14.)

Class Counsel now moves for preliminary approval of the new Settlement that would provide for notice to these 893 Class Members and allow each to submit a claim for a *pro rata* share of the Settlement Fund, after the deduction of Settlement Administration Expenses, an attorneys' Fee Award, and Plaintiff's Incentive Award.

## ARGUMENT

**I.     THE PROPOSED SETTLEMENT.**

The proposed Settlement provides the following:

**A.     Certification Of The Proposed Class.**

The Plaintiff requests that the Court, for the purposes of settlement, certify a Class

defined as:

> All individuals or entities who, up to the date of preliminary approval of this settlement, were sent one or more facsimile in the form of Exhibit A to the Complaint from or on behalf of Defendant or who own the fax machines to which the facsimiles were sent.

**B.     Class Relief.**

The Settlement establishes the following relief for Class Members:

- **Cash Awards Available To All Settlement Class Members.** Each Settlement Class Member who submits an Approved Claim, shall receive one *pro rata* share of the $100,000 Settlement Fund, after the Settlement Administration Expenses (approximately $20,000) Plaintiff's requested attorneys' Fee Award (35% of the Fund, approximately $27,475) and Incentive Award (approximately $1,500) have been deducted from the Settlement Fund (the "Net Settlement Fund"). Assuming the Net Settlement Fund is $51,025, Class Counsel estimates that if 5% or 10% of Class Members submit Approved Claims, each said Class Member will receive approximately $1,159 or $573 respectively.

- **No Reversion.** Under no circumstances shall any amounts of the Settlement Fund revert back to PTL.

The Settlement is thus designed to afford relief to as many Class members as possible.

**C.     Class Notice.**

Subject to the Court granting preliminary approval of the Settlement, the Settlement

Administrator will provide the Class with notice of the proposed Settlement by the following

methods:

- **Direct Notice Via U.S. Mail And Facsimile.** Within thirty (30) days after Preliminary Approval, the Settlement Administrator shall, based upon a

review of the Class List, disseminate the Notice and Claim Form in the form of Exhibit A to the Agreement by facsimile and in the form of Exhibit B to the Agreement by U.S. Mail to each of the Settlement Class Members. As for notice sent by facsimile, the Settlement Administrator shall make at least two attempts to transmit the Notice and Claim Form to those fax numbers where the initial transmission failed. As for notice sent by U.S. Mail, the addresses provided in Class List shall be run through a National Change of Address database prior to being mailed. The postage rate selected for the mailing of the Notice shall provide for notification of forwarding addresses. If the Notice is returned by the Postal Service with a forwarding address or other error that can be ascertained and corrected, then Class Counsel or the Class Administrator shall re-send by the Notice to the new address within five (5) business days.

- **Settlement Website.** Within thirty (30) days following the entry of the Preliminary Approval Order, Notice shall be provided on a website at www.TruckCarrierTCPASettlement.Siprut.com, which shall be administered by Class Counsel. On the Settlement Website, Class Members can download the Notice and Claim Form attached as Exhibit A to the Agreement.

- **CAFA Notice.** Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, PTL shall serve upon the Attorneys General of each U.S. State in which there are members of the Class, the Attorney General of the United States, and other required government officials, notice of the proposed settlement. PTL appoints the firm of Heffler Claims Group LLC to conduct CAFA Notice of its behalf. The costs of conducting CAFA Notice shall be deducted from the Settlement Fund.

In order to receive a Cash Award described above, the Settlement Class Member must submit a Claim Form within sixty days after the Notice Date. Class Members may submit their claims via mail or facsimile. Class Members who wish to either opt-out of or object to the Settlement, must do so in accordance with the Agreement within sixty days after the Notice Date. Within ninety days of the Effective Date, or at another time as the Court directs, the Settlement Administrator shall cause distribution of Cash Awards to the Settlement Class Members who submit Approved Claims.

### D. Incentive Award To Class Representative.

Subject to Court approval, the Plaintiff-Class Representative will request an Incentive Award in the amount of $1,500 in recognition of its contributions to the Settlement Class and the risk it incurred in commencing the action, both financial and otherwise. The Court does <u>not</u> need to award or otherwise rule on Plaintiff's Incentive Award at this time. Class Counsel will file a motion for the Incentive Award, pursuant to the schedule in the Preliminary Approval Order, and will support the request for the award in detail.

### E. Attorneys' Fees And Expenses.

Class Counsel will request fees and expenses in the amount of 35% of the Fund, after the Settlement Administration Expenses and the Incentive Award are deducted (approximately $27,475). Importantly, however, this is not a provision of the Settlement. There is no agreement on fees—*i.e.*, no "clear-sailing" provision—consistent with recent Seventh Circuit jurisprudence. *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014) ("Clear-sailing clauses have not been held to be unlawful per se, but at least in a case such as this, involving a non-cash settlement award to the class, such a clause should be subjected to intense critical scrutiny by the district court[.]") *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429 (2015). Of course, this Settlement *is a common fund, cash* settlement and, hence, "intense critical scrutiny" is not warranted. In any event, the Court does <u>not</u> need to award or otherwise rule on Class Counsel's fees at this time. Class Counsel will file a motion for attorneys' fees separately, pursuant to the schedule in the Preliminary Approval Order, and will support the request for fees in detail.

## II.    THE PROPOSED SETTLEMENT IS FAIR
##        AND SHOULD BE PRELIMINARILY APPROVED.

Both judicial and public policies strongly favor the settlement of class action litigation. Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) ("We also consider the facts 'in the light most favorable to the settlement.'"); *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Although the standards to be applied at the preliminary approval stage "are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l*, No. 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007). The factors considered at this stage include: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).[2]

### A.    Strength Of The Case.

Plaintiff alleges that PTL violated the TCPA by sending fax advertisements to unwilling recipients. Plaintiff contends that PTL did so without prior express invitation or permission and without any established business relationship. The Complaint thus alleges that Plaintiff and the Class are entitled to statutory or actual damages, injunctive relief, and other equitable relief this Court deems appropriate.

---

[2] Until notice is provided, there is not an opportunity for Class Members to react to the Settlement. Hence, factors "(3)" and "(4)" are not analyzed below.

PTL denies liability and contends that it has a number of affirmative defenses that would defeat Plaintiff's claim on both substantive and procedural grounds. Primarily, PTL contends that the faxes it sent were not advertisements within the meaning of the TCPA. (Dkt. No. 12.) If PTL was successful on this basis alone, its conduct would not be a violation of the TCPA. *See* 47 U.S.C. § 227(a)(5) (defining advertisement as "any material advertising the commercial availability or quality of any property, goods, or services").[3] Clearly, one of the factors to be considered as to the fairness of a class action settlement is a defendant's willingness and ability to mount just such a vigorous defense.

"The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong*, 773 F.3d at 864. In doing so, however, "courts should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010)

---

[3] *See also Physician's Healthsource, Inc. v. MulitPlan Servs. Corp.*, No. 12–11693–GAO, 2013 WL 5299134, at *2 (D. Mass. Sept. 18, 2013) ("Based on the four corners of the facsimile, there is no overt advertising . . . nor is there any enticement that could be construed as pretext to advertise commercial products or services."); *Friedman v. Torchmark Corp.*, No. 12–CV–2837–IEG (BGS)*, 2013 WL 1629084, *4 (S.D. Cal. Apr. 16, 2013) ("Defendant's message was not aimed at encouraging Plaintiff to engage in future commercial transaction with Defendant to purchase its goods. Rather, Defendant's message informed Plaintiff about a recruiting webinar that could have resulted in an opportunity to sell Defendant's goods, which is akin to an offer of employment."); *Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 852-53 (N.D. Ill. 2007) (fax inviting business owners to participate in research discussion on new healthcare program sponsored by chamber of commerce was not advertisement; although plaintiff compared fax to pre-textual notification about free seminar where sender's products were promoted, fax was not "indiscriminate, open ended invitation" to do business with defendant but instead indicated that individuals interested in participating in research study must be qualified and would be subject to pre-screening); *NB. Indus. v. Wells Fargo & Co.*, No. C 10–03203 LB, 2010 WL 4939970 (N.D. Cal. Nov. 30, 2010) (faxes containing information and application relating to Asian-American business leadership award and banquet that were sponsored by sender were not advertisements because they did not mention defendant's products); *Lutz Appellate Servs., Inc. v. Curry*, 859 F. Supp. 180, 181 (E.D. Pa.1994) (fax about job openings at sender was not an advertisement).

(internal quotations omitted). Moreover, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *Id.* (internal quotations omitted). Rather, an integral part of the Court's strength-versus-merits evaluation "is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985).

As explained above, the Settlement allows Class Members to receive monetary relief. While Plaintiff believes that its claim for maximum statutory damages under the TCPA is strong, Plaintiff is also aware of the inherent risks and costs of continuing with complex litigation of this nature. If PTL were to prevail on its asserted defenses, Class Members, including Plaintiff, would receive no relief *at all*. Given this possibility, a *pro rata* distribution of the Net Fund is a meaningful achievement. *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *7 (N.D. Ill. Mar. 2, 2016) ("The actual recovery per *claimant* is approximately $52.50. As some objectors note, . . . that recovery is well below the $500 statutory recovery available for each call or text. However, the recovery falls well within the range of recoveries in other recent TCPA class actions.") (emphasis original) (internal citations omitted); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 489 (N.D. Ill. 2015) (Kennelly, J.) ("It is true that thirty dollars per claimant is substantially less than the $500 statutory recovery available for each unlawful phone call Walgreens allegedly made. But Kolinek winning at trial and securing complete recovery for all nine million class members is but one potentiality, and it is a dubious one at that."). Accordingly, the Settlement provides a tangible benefit to all those affected by PTL's alleged violation of the TCPA.

**B.      The Risk, Expense, & Complexity Of The Case.**

Due to the nature of Plaintiff's case, trial will require the collection of evidence and witness testimony from across the country. Both Parties would examine a number of PTL's current and former employees. PTL intends to assert a number of affirmative defenses that it contends bar Plaintiff's claim in whole or in part. PTL would present—and Plaintiff would necessarily attempt to rebut—evidence and testimony on whether: (a) PTL's faxes constitute an advertisement within the meaning of the TCPA; and (b) individual Class Members provided prior express permission to or had an existing business relationship with PTL. The uncertainty as to whether these affirmative defenses apply in this case creates substantial risk for both sides. Plaintiff and proposed Class Counsel also recognize that the expense, duration, and complexity of protracted litigation would be substantial, and would require further briefing on numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses.

**C.      The Opinion Of Counsel.**

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, at 586-87 (N.D. Ill. 2011). Here, Class Counsel has extensive experience in consumer class actions and complex litigation. (Salam Decl. ¶15.) *See Chase Bank*, 2016 WL 806549, at *9   ("Class Counsel are experienced TCPA litigators and strongly support the settlement. . . . this factor (whatever its weight) favors approval."); *Walgreen*, 311 F.R.D. at 495 ("Class counsel in this case are highly experienced class action litigators who strongly support the proposed settlement. This factor weighs in favor of approval.").

Based upon proposed Class Counsel's analysis and the information obtained from PTL, AT&T, Carrier411, and Mr. Royalty, a *pro rata* share of the Class Fund represents a significant

recovery for the Settlement Class, especially when weighed against PTL's anticipated defenses and the inherent risks of litigation. Class Counsel believes that the Settlement is beneficial to the Class and meets the class-certification requirements of Rule 23.

### D.    The Extent Of Discovery.

Based upon information exchanged by the Parties, Plaintiff believes it possesses the evidence needed to evaluate the strengths and weaknesses of the case. PTL has provided Plaintiff with information relating to the nature of the program described in the fax. Further, Plaintiff has obtained empirical data concerning the number of faxes sent. As such, counsel for each party has sufficient information to assess the strengths, weaknesses, and likely expense of taking this case to trial.

While the Parties have both formally and informally exchanged information critical to evaluating the strength of Plaintiff's contentions (and PTL's defenses), the amount of discovery taken is not a prerequisite to a class action settlement. Courts have noted that, "the label of 'discovery' [either formal or informal] is not what matters. Instead, the pertinent inquiry is what facts and information have been provided." *Schulte*, 805 F. Supp. 2d at 587 (internal citation omitted). *See also in re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 211 (5th Cir. 1981) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted.") (emphasis omitted); *Chase Bank*, 2016 WL 806549, at *9 ("Although this settlement-directed discovery is not identical to the full merits discovery that would enable counsel to better evaluate the merits of plaintiffs' claims, extensive formal discovery would entail substantial cost and might not have placed the parties in a materially better position than they are now to determine an appropriate settlement value.") (internal citations and quotations omitted); MANUAL FOR COMPLEX LITIGATION (Fourth), § 11.423 (2004)

(noting that informal discovery is a recognized method of minimizing the cost, delay and burden associated with formal discovery). Here, information more than sufficient to make a reasonable and informed decision has been procured, meaning that there was a reasonable, informed basis to evaluate the Settlement.

E.       **The Presence Of Governmental Participants.**

Although there is no governmental entity participating in this matter as of this time, full and complete notice is being provided to all appropriate state and federal authorities. PTL will provide such notice which will include all appropriate information and documents required by the Class Action Fairness Act, 28 U.S.C. § 1715(b).

**III.    THE SETTLEMENT CLASS SHOULD
         BE PROVISIONALLY CERTIFIED; THE FORM
         AND METHOD OF NOTICE TO THE CLASS MEMBERS
         SHOULD BE APPROVED; AND, A HEARING REGARDING
         FINAL APPROVAL OF THE SETTLEMENT SHOULD BE SCHEDULED.**

A.       **The Class Should Be Provisionally Certified.**

Before preliminary approval of a class action settlement can be granted, the Court must determine that the proposed class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.632. Federal Rule of Civil Procedure 23(a) provides that a class may be certified if (i) the class is so numerous that joinder of all members is impractical, (ii) there are questions of law or fact common to the class, (iii) the claims or defenses of the representative parties are typical of those of the class, and (iv) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Williams v. Chartwell Fin. Serv., Ltd*., 204 F.3d 748, 760 (7th Cir. 2000).

Once the requirements of Rule 23(a) have been met, the proposed class must then satisfy at least one of the three subsections of Rule 23(b). *Amchem*, 521 U.S. at 614. In this case, Plaintiff seeks certification of the Class under Rule 23(b)(3), which requires that (i) the questions

of law or fact common to all class members predominate over issues affecting only individual members, and (ii) the maintenance of a class action be superior to other available methods for the fair and efficient adjudication of the controversy. *Id.* at 615; *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

As discussed further below, the proposed Class meets each of the requirements of Rules 23(a) and (b), and therefore, certification is appropriate.[4]

### 1. Numerosity — Federal Rule Of Civil Procedure 23(a).

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is neither a specific number required to satisfy this requirement, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006) ("[A] plaintiff need not identify each class member or even provide an exact number of class members to satisfy that element.") (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954 (7th Cir. 1989)); 3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2001). Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, No. 03 C 1995, 2004 WL 719278, at *2 (N.D. Ill. Mar. 31, 2004).

"[A] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). "Although no magic number exists for satisfying the numerosity requirement, the Seventh Circuit has held that '[e]ven if the class were limited to 40 [members] … that is a sufficiently

---

[4] As detailed in the Settlement Agreement, PTL does not oppose the request for class certification solely for the purposes of settlement.

large group to satisfy Rule 23(a) where the individual members of the class are widely scattered and their holdings are generally too small to warrant undertaking individual actions.'" *Chase Bank USA, N.A.*, 2016 WL 806549, at *4 (quoting *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969)); *Pope v. Harvard Banchares, Inc*., 240 F.R.D. 383, 387 (N.D. Ill. 2006) (granting class certification, distinguishing that "impracticable" does not mean "impossible," but rather extremely difficult and inconvenient).

In this case, 893 individuals and entities, at most, were sent facsimiles similar to the fax attached to the Complaint as Exhibit A. (Salam Decl. ¶13.) Accordingly, the Class satisfies the numerosity requirement. *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

### 2.    Commonality/Predominance — Federal Rule Of Civil Procedure 23(a)(2) and 23(b)(3).

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts recognize that there may be factual differences between class members, but "factual variations among class members' claims" do not themselves "defeat the certification of a class." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992) (citing *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980)), *cert. denied*, 451 U.S. 914 (1980)), *cert. denied*, 506 U.S. 1051 (1993). In fact, the threshold for commonality is not high. *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992) (granting class certification, characterizing the commonality requirement as "a low hurdle" easily surmounted). Rather, commonality exists if a common nucleus of operative fact exists, even if as to one question of law or fact. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011)

("[C]ommonality requires that the claims of the class simply "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."); *Whitten v. ARS Nat'l Servs. Inc.*, No. 00 C 6080, 2001 WL 1143238, *3 (N.D. Ill. Sept. 27, 2001) (commonality is often found where "Defendants have engaged in standardized conduct toward the members of the proposed class").

The Settlement Class shares common questions of fact and law that predominate over issues affecting only individual Settlement Class Members. Those common factual and legal issues include:

> a.   Whether PTL engaged in a pattern of sending unsolicited facsimile advertisements;
>
> b.   Whether PTL's facsimiles constitute advertisements;
>
> c.   Whether PTL sent, or caused to be sent, the facsimiles at issue;
>
> d.   The manner in which PTL compiled or obtained their list of facsimile numbers; and
>
> e.   Whether PTL thereby violated the TCPA.

Additionally, Rule 23(b)(3) provides that a class action may be maintained where the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). "Predominance . . . is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013). A class action is the more efficient procedure for determining liability and damages in a case such as this, where "loss, and the statutory remedy, are the same for all recipients[.]" *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) *reh'g denied* (Sept. 24, 2013), *cert. denied,* 134 S. Ct. 1318 (2014).

In this case, common questions predominate for the Settlement Class because PTL's alleged unlawful conduct presents common questions with regard to all proposed Settlement Class Members. *Holtzman*, 728 F.3d at 684 ("Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients."). Thus, in the context of the proposed class-wide settlement, the predominance requirement is satisfied because liability and damages would have been decided predominantly, if not entirely, based on common evidence of PTL's conduct.

### 3.    Typicality — Federal Rule Of Civil Procedure 23(a)(3).

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if the plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id.* "Typicality does not mean identical, and the typicality requirement is liberally construed." *In re Neopharm, Inc. Secs. Litig.*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) (citation omitted).

Here, Plaintiff and the Settlement Class allege that they all received unsolicited facsimile advertisements from or on behalf of PTL, and that PTL sent or had sent on its behalf the facsimiles in violation of the TCPA, thereby entitling Plaintiff and the Settlement Class to actual or statutory damages. Moreover, there are no defenses that pertain to Plaintiff that would not also pertain to the Settlement Class. Accordingly, Plaintiff's claims are typical of the other Class members' claims.

-17-

####     4.     Adequacy of Representation —
####          Federal Rule Of Civil Procedure 23(a)(4).

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, class representatives must establish that they: "(1) [have] a sufficient stake in the outcome to ensure zealous advocacy, and [have] no claims antagonistic to or conflicting with the claims of other class members, and (2) [are] represented by qualified, experienced counsel." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987) (finding class counsel was adequate stating if "attorneys have been found to be adequate in the past, it is persuasive evidence that they will be adequate again.").

Here, Plaintiff's interests are consonant with the interests of the Settlement Class— obtaining relief from PTL for its alleged unlawful transmission of facsimile advertisements, and ensuring that PTL does not continue such conduct in the future. Plaintiff has no interests antagonistic to the interests of the other Settlement Class Members. (Salam Decl. ¶16.) Moreover, Class Counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have significant experience in consumer class actions involving similar issues, scope, and complexity. (*Id.* ¶15; Siprut Firm Resume (attached as Exhibit A to the Salam Decl.).) Accordingly, Plaintiff and its counsel would adequately represent the proposed Class.

### 5. Superiority — Federal Rule Of Civil Procedure 23(b)(3).

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b). Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). When settling a class action, Plaintiff does not have to prove manageability under Rule 23(b)(3) as if the case were being fully litigated because settlement may "eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004) (citing *Amchem*, 521 U.S. at 117)).

The present class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the Class' claims. The burden and expense of individual prosecution of the litigation necessitated by PTL's actions makes a class action superior to other available methods of resolution. Thus, absent a class action, it would be difficult, if not impossible, for individual members of the Class to obtain effective relief.

### B. The Form And Method Of Service Of Class Notice Should Be Approved.

"When the parties reach a settlement agreement before a class determination and seek to stipulate that the settlement will have class wide scope, a class notice must be sent to provide absent class members with certain basic information so that they have an opportunity to consider the terms of the settlement." 2 NEWBERG, section 11.30, p. 11-62-11-63. The substance of the notice must describe, in plain language, the nature of the action, the definition of the certified class, and the class claims and defenses at issue. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must

also explain that class members may enter an appearance through counsel if desired, may request to be excluded from the class, and that a class judgment shall have a binding effect on all class members. *Id*. Additionally, dissemination of the notice must comport with both Rule 23 and due process, which require that a class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The proposed notice plan in this case satisfies Rule 23's notice requirements as well as due process considerations, and provides:

1.      A brief summary of the claims alleged in the action;

2.      An explanation of the proposed terms of the Settlement, the amount the Class members are entitled to receive under the Settlement Agreement, and the method by which Class members can claim their Settlement benefit;

3.      An explanation of the right to opt out of and/or object to the Settlement within given time-frames and subject to certain requirements;

4.      An explanation that members of the Class who do not opt out will be bound by the proposed Settlement and judgment and will have released their claims;

5.      An explanation that members of the Class who do not opt out will be represented by proposed Class Counsel; and

6.      An identification of Class Counsel and a means for making inquiries thereof.

Federal courts authorize service of class notice by a variety of reliable means. In this regard, "[t]here is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, 'individual notice must be provided to those Class members who are identifiable through reasonable effort.'" *Eisen,* 417 U.S. at 175-76.

In this case, the Settlement provides for direct notice via U.S. Mail and facsimile to each of the 893 unique Class Members. Courts in this District routinely find such methods of notice reasonably calculated to reach class members by the best means practicable. *Dr. William P. Gress v. Premier Healthcare Exchange West, Inc.*, Case Nos. 14-cv-501, 14-cv-2177, Dkt. No. 80 (N.D. Ill.) (approving fax and mail notice); *AL And PO Corp. v. Quality Medical Products, LLC*, No. 14-cv-1243, Dkt. No. 66 (N.D. Ill.) (approving fax notice); *C.E. Design, Ltd. v. King Supply Co., LLC*, No. 09 C 2057, 2012 WL 2976909, at *3 (N.D. Ill. July 20, 2012) (approving notice via facsimile); *Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, 12-cv-780, Dkt. No. 73 (N.D. Ill.) (fax and publication notice); *Able Home Health, LLC and Dr. G. Neil Garrett DDS, PC v. Globe Med.-Surgical Supply Co.*, 12-cv-5608, Dkt. No. 90 (N.D. Ill.) (fax notice); *Dr. William P. Gress v. Northwood, Inc.*, 12-cv-7278, Dkt. No. 38 (N.D. Ill.); *Able Home Health, LLC v. Healthy Advice Commc'ns., Inc.*, 12-cv-3019, Dkt. No. 60 (N.D. Ill.) (fax and mail notice); *Richard Wade Architects, P.C. v. Eng'g. Servs. and Prods. Co.*, 11-cv-9251, Dkt. No. 58 (N.D. Ill.) (fax notice); *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, No. 11–2658 (JBS/KMW), 2014 WL 413533, at *1-2 (D.N.J. Feb. 3, 2014) (fax notice); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1204-05 (C.D. Cal. Mar. 27, 2014) (fax notice); *A & L Indus., Inc. v. P. Cipollini, Inc.*, No. 12–07598 (SRC), 2014 WL 906180, at *1 (D.N.J. Mar. 7, 2014)(rejecting arguments that notice had to be served in accordance with Rule 5(b); "Rule 23(c) should supersede because Rule 23(c) addresses class notice specifically, whereas Rule 5 addresses service generally.") Accordingly, the notice plan should be approved.

### C.     The Court Should Schedule A Hearing For Final Settlement Approval.

Following notice to the Class, a Fairness Hearing is to be held on the proposed Settlement. MANUAL FOR COMPLEX LITIGATION, § 21.633. Accordingly, Plaintiff, by proposed Class Counsel, respectfully requests that the Court schedule a hearing on final approval of the

Settlement to be held no earlier than 180 days after entry of the Preliminary Approval Order. The hearing on the final settlement approval should be scheduled now so that the date can be disclosed in the class notice. After receiving final approval, the Parties request that the Court enter a final order approving the Settlement.

## <u>CONCLUSION</u>

Based upon the foregoing, and because the proposed Settlement is fair, reasonable, and advantageous to the proposed Class, Plaintiff respectfully requests that the Court enter an Order:

A.   Preliminarily approving the Settlement as being fair, reasonable, and adequate;

B.   Setting the date and time of the Final Approval Hearing to be held no earlier than 180 days after entry of the Preliminary Approval Order;

C.   Provisionally certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

D.   Appointing Plaintiff as Class representative;

E.   Appointing Ismael T. Salam and Siprut PC as Class Counsel; and

F.   Such other and further relief the Court deems just and proper.


Dated: March 31, 2016                                     Respectfully submitted,

                                                         By:  *s/ Ismael T. Salam*

                                                         Ismael T. Salam
                                                         *isalam@siprut.com*
                                                         **SIPRUT** PC
                                                         17 N. State Street
                                                         Suite 1600
                                                         Chicago, Illinois  60602
                                                         Phone: 312.236.0000
                                                         Fax: 312.878.1342

                                                         *Counsel for Plaintiff*
                                                         *and the Proposed Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Motion For Preliminary Approval Of Class Action Settlement** was filed this 31st day of March 2016 via the electronic filing system of the United States District Court for the Northern District of Illinois, which will automatically serve all counsel of record.


*s/ Ismael T. Salam*
_____

4836-7512-8366, v. 2