**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GROK LINES, INC., individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 14-cv-8033 |
| v. | ) ) | Hon. Edmond E. Chang |
| PASCHALL TRUCK LINES, INC., a Kentucky corporation, | ) ) ) | Hon. Sidney Schenkier |
| Defendant. | ) ) | |

**PLAINTIFF'S MOTION FOR**
**ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
John S. Marrese
*jmarrese@siprut.com*
Ke Liu
*kliu@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois  60602
Phone: 312.236.0000
Fax: 312.241.1260
**www.siprut.com**

*Counsel for Plaintiff*
*and the Settlement Class*

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

PROCEDURAL HISTORY.........................................................................................2

ARGUMENT ................................................................................................................5

I.      Class Counsel Overcame Substantial
        Defenses And Hurdles To Achieve This Settlement......................................5

        A.  Defendant Had Significant Defenses Which,
            If Successful, Would Have Resulted In Nothing For The Class.......................5

        B.  Class Counsel Performed Substantial Work On Behalf Of The Class .............6

II.     Attorneys' Fees Should Be Awarded
        Based On The Percentage Of The Fund Method ...........................................7

        A.  The Seventh Favors The Percentage-Of-Fund Methodology Here ..................7

        B.  Class Counsel Requests 35% Of The
            Common Benefit Provided To The Class .........................................................10

        C.  The Requested Fees Are Also Appropriate Under The Lodestar Method.......10

III.    The Requested Incentive Award
        To The Class Representative Plaintiff Is Proper........................................13

CONCLUSION............................................................................................................14

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................... 8

*Fox v. Vice*,
    131 S. Ct. 2205 (2011) ........................................................ 11, 12

*Hensley v. Eckhart*,
    461 U.S. 424 (1983) .................................................................. 11

**United States Circuit Court of Appeals Cases**

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,
    743 F.3d 243 (7th Cir. 2014) ................................................... 11

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ........................................... 12, 14

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2004) ..................................................... 7

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) ............................................... 7, 10

*Gastineau v. Wright*,
    592 F.3d 747 (7th Cir. 2010) .............................................. 11, 12

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) .............................................. 12, 13

*In re Sw. Airlines Voucher Litig.*,
    799 F.3d 701 (7th Cir. 2015) ..................................................... 8

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ..................................................... 7

*Matter of Cont'l Illinois Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ..................................................... 7

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) .................................................. 1, 7

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ..................................................... 7

*Skelton v. Gen. Motors Corp.*,
860 F.2d 250 (7th Cir. 1988) .................................................................................. 12

**United States District Court Cases**

*Abbott v. Lockheed Martin Corp.*,
Case No. 06-cv-701-MJR-DGW,
2015 WL 4398475 (S.D. Ill. July 17, 2015) ................................................. 8, 9, 10, 13

*Beesley v. Int'l Paper Co.*,
No. 3:06-CV-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) .................. 8

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
00-584-DRH, 2004 WL 287902 (S.D. Ill. Jan. 22, 2004) ....................................... 9, 10

*Bickel v. Sheriff of Whitley Cnty*,
No. 1:08-cv-102-TLS, 2015 WL 1402018 (N.D. Ind. March 26, 2015) ..................... 9

*CE Design Ltd. v. Cy's Crab House N., Inc.*,
No. 07-cv-05456, Dkt. 424 (N.D. Ill. Oct. 27, 2011) ................................................. 9

*CE Design, Ltd. v. Exterior Sys., Inc.*,
No. 07-cv-00066, Dkt. No. 39 (N.D. Ill. Dec. 6, 2007) ................................................. 9

*Chapa IV v. Trugreen, Inc.*,
No. 13-cv-3957, Dkt. No. 50 (N.D. Ill. Jan. 27, 2015) ................................................. 9

*City of Greenville v. Syngenta Crop Prot., Inc.*,
904 F. Supp. 2d 902 (S.D. Ill. 2012) .............................................................. 8, 10, 13

*Connolly v. Nat'l Sch. Bus. Serv., Inc.*,
177 F.3d 593 (7th Cir.1999) ....................................................................................... 12

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
No. 11-CV-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ............................. 9, 10

*Cummings v Sallie Mae*,
No. 12-cv-9984, Dkt. 91 (N.D. Ill. May 30, 2014) ..................................................... 9

*Desai v. ADT Sec. Servs., Inc.*,
No. 11-cv-01925, Dkt. 243 (N.D. Ill. June 21, 2013) ................................................. 9

*Friedman v. Torchmark Corp.*,
No. 12-CV-2837-IEG (BGS), 2013 WL 1629084 (S.D. Cal. Apr. 16, 2013) ............. 5

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
  No. 07-cv-05953, Dkt. No. 146 (N.D. Ill. Nov. 1, 2010) ............................................. 9

*Gress v. Premier Healthcare Exchange, Inc.*,
  No. 14-cv-501, Dkt. No. 94 (N.D. Ill. Sept. 11, 2015) ............................................. 11

*Hanley v. Fifth Third Bank*,
  No. 12-cv-01612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) ............................................ 9

*Hinman v. M & M Rental Ctr., Inc.*,
  No. 06-cv-01156, Dkt. No. 225 (N.D. Ill. Oct. 6, 2009) ............................................ 9

*Holtzman v. CCH*,
  No. 07-cv-07033, Dkt. 33 (N.D. Ill. Sept. 30, 2009) ................................................ 9

*In re Bayou Sorrel Class Action*,
  6:04-cv-1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) ..................................... 8

*In re Brand Name Prescription Drugs Antitrust Litig.*,
  2000 WL 204112 (N.D. Ill. Feb. 9, 2000) ................................................................ 13

*In re Capital One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ...................................................................... 7, 8

*In re Cenco, Inc. Sec. Litig.*,
  519 F. Supp. 322 (N.D. Ill. 1981) ..................................................................... 12, 13

*In re Dairy Farmers of Am., Inc.*,
  No. 09-cv-3690, MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015) ........... 9

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005) ............................................................................... 13

*In re Sw. Airlines Voucher Litig.*,
  2013 WL 5497275  (N.D. Ill. Oct. 3, 2013) ............................................................. 14

*Kolinek v. Walgreen Co.*,
  No. 13 C 4806, 2015 WL 7450759 (N.D. Ill. Nov. 23, 2015) ..................................... 8

*Lutz Appellate Servs., Inc. v. Curry*,
  859 F. Supp. 180 (E.D. Pa. 1994) ............................................................................. 6

*Martin v. Dun & Bradstreet, Inc.*,
  No. 12-cv-00215, Dkt. 66 (N.D. Ill. Jan. 16, 2014) ................................................... 9

*McCue v. MB Fin., Inc.*,
    No. 15 CV 988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) ......................... 8, 10, 13

*Meyenburg v. Exxon Mobil Corp.*,
    3:05-cv-15-DGW, 2006 WL 2191422 (S.D. Ill. July 31, 2006)................................ 10

*NB v. Indus. v. Wells Fargo & Co.*,
    No. C 10-03203 LB, 2010 WL 4939970 (N.D. Cal. Nov. 30, 2010) .......................... 5

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*,
    No. 08-cv-05959, Dkt. 116 (N.D. Ill. Dec. 21, 2011).................................................. 9

*Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc.*,
    526 F. Supp. 2d 851 (N.D. Ill. 2007) ........................................................................... 5

*Physician's Healthsource, Inc. v. MultiPlan Servs. Corp.*,
    No. 12-11693-GAO, 2013 WL 5299134 (D. Mass. Sept. 18, 2013)........................... 5

*Prena v. BMO Fin. Corp.*,
    No. 15 C 09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ................................... 9

*Saf-TGard Int'l, Inc., v. Seiko Corp. of Am.*,
    No. 09-cv-00776, Dkt. No. 100 (N.D. Ill. Jan. 14, 2011) ............................................ 9

*Spicer v. Chi. Bd. Options Exch., Inc.*,
    844 F. Supp. 1226 (N.D. Ill. 1993) ........................................................................... 14

*Summers v. UAL Corp. ESOP Comm.*,
    03-cv-1537, 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005)........................................ 10

*Will v. Gen. Dynamics Corp.*,
    No. CIV. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010).................... 8, 9

*Zolkos v. Scriptfleet, Inc.*,
    No. 12 Civ. 8230 (GF), 2015 WL 4275540 (N.D. Ill. July 13, 2015) ......................... 9

## Statutes and Rules

47 U.S.C. § 227......................................................................................................................... 5

Pursuant to Fed. R. Civ. P. 23 and this Court's April 4, 2016, Preliminary Approval Order (Dkt. No. 68), Plaintiff Grok Lines, Inc. ("Plaintiff"), through counsel, respectfully submits the following Motion For Attorneys' Fees, Costs, And Incentive Award.[1]

## INTRODUCTION

Class Counsel seeks the Court's approval of an award of attorneys' fees and expenses based on a percentage of the all-in, non-reversionary settlement fund of $100,000 (the "Settlement Fund") achieved through Class Counsel's work. The fee request comprises 35% of the Settlement Fund *after* the Settlement Administrator's costs and Plaintiff's incentive award are first deducted (the "Class Fund"), precisely as the Seventh Circuit dictates, plus unreimbursed litigation costs.

Class Counsel's request is well within both the market price for representation in complex litigation on a contingency-fee basis and the range for attorneys' fees that the Seventh Circuit has indicated is presumptively reasonable. *See Pearson v. NBTY, Inc.,* 772 F.3d 778, 782 (7th Cir. 2014) (stating that, in consumer class actions, attorneys' fees should not exceed 50% of the money going to class members and their counsel). The fee request is also consistent with attorneys' fees awarded in similar cases, including by courts in this District. The reasonableness of the fee request is further bolstered given the risks and investment required to develop and prosecute a case of this nature, as well as the excellent result achieved for the Class here.

Although the Court need not consider lodestar in approving the fee request here—the law permits and indeed encourages the percentage-of-the-fund analysis alone—a lodestar cross-check serves only to support the fee request. The requested attorneys' fees of $27,825.00 are only ***15.4%*** of Class Counsel's base lodestar of $179,810.

---

[1] Unless otherwise stated, capitalized terms used herein shall have the same meaning as provided in the Parties' Settlement Agreement, attached as Exhibit 1 to Dkt. No. 65.

Class Counsel also requests that the Court award Plaintiff a modest, routine incentive award in the amount of $1,500 for his work on behalf of the Class. For these reasons and those discussed below, Plaintiff respectfully requests that this motion be granted.

## PROCEDURAL HISTORY

On October 15, 2014, Plaintiff filed its Class Action Complaint (the "Complaint") against Defendant Paschall Truck Lines, Inc. ("Defendant" or "PTL") (Plaintiff and PTL are, collectively, the "Parties") seeking to represent a proposed class of all individuals or entities who allegedly received unsolicited junk faxes from or on behalf of PTL. (Dkt. No. 1.) Plaintiff concurrently filed its Motion For Class Certification. (Dkt. No. 3.) On November 17, 2014, this Court entered Plaintiff's Motion For Class Certification and reserved ruling for class discovery. (Dkt. No. 15.)

After effecting service on PTL, this Court set an initial status hearing for December 1, 2014, and required the Parties to file a joint initial status report by November 26, 2014. (Dkt. No. 9.) On November 12, 2014, PTL filed its Defendant's Motion To Dismiss and Brief In Support Of Defendant's Motion To Dismiss. (Dkt. Nos. 12-13.) On November 17, 2014, the Court granted PTL's motion to dismiss in part, dismissing Plaintiff's conversion claim (Count III), but denying the remainder of the motion. (Dkt. No. 16.) On November 24, 2014, PTL filed its Answer And Affirmative Defenses To Class Action Complaint. (Dkt. No. 17.) In response, on December 16, 2014, Plaintiff filed its Plaintiff's Motion To Strike PTL's Affirmative Defenses. (Dkt. No. 24.) On December 19, 2014, the Court denied Plaintiff's motion to strike without prejudice. (Dkt. No. 26.)

Meanwhile, on November 25, 2014, the Parties filed their Joint Initial Status Report. (Dkt. No. 20.) On December 1, 2014, this Court held an initial status hearing and ordered that: (a) Rule 26(a)(1) initial disclosures be made by December 15, 2014; and (b) the Parties serve their first

round of written discovery requests be made by January 5, 2015. (Dkt. No. 23.) On December 15, 2014, the Parties made their Rule 26(a)(1) initial disclosures. (Declaration of Joseph J. Siprut ("Siprut Decl."), attached hereto as Exhibit 1, ¶6). On December 19, 2015, PTL served its First Set Of Requests For Admission On Plaintiff. (Ex. 1 hereto, Siprut Decl. ¶7.) On January 5, 2015, Plaintiff served its First Set Of Interrogatories, First Set Of Requests For Admission, and First Set Of Requests For Production on PTL. (*Id.*) On January 15, 2015, Plaintiff answered PTL's First Set Of Requests For Admission. (*Id.*) On January 20, 2015, the Parties held a Local Rule 37.2 conference to discuss Plaintiff's answers to PTL's First Set Of Requests For Admission. (*Id.* at ¶8.) Following the conference, Plaintiff amended its responses. (*Id.*)

In January 2015, the Parties discussed PTL amending its Answer And Affirmative Defenses To Class Action Complaint to cure deficiencies in PTL's affirmative defenses claimed by Plaintiff. (*Id.*) On January 20, 2015, PTL filed its Amended Answer And Affirmative Defenses To Class Action Complaint. (Dkt. No. 27.)

Between February and May 2015, the Parties engaged in substantive negotiations regarding whether the matter could be resolved on a class-wide basis. (Ex. 1 hereto, Siprut Decl. ¶9.) PTL represented that the alleged class at issue numbered approximately 200 recipients. (*Id.*) However, PTL did not have records showing to whom it sent faxes and, thus, could not objectively show whether the class size was greater than 200. (*Id.*) Indeed, PTL continues to assert that, if it contested class certification in this matter, Plaintiff could not gain certification of class because there is no proof of whom received a fax. (*Id.*)

Unable to agree on all material terms of a settlement under a Rule 23(b)(2) framework, the Parties held a settlement conference with Magistrate Judge Sidney Schenkier on June 3, 2015 (Dkt. No. 34), where a settlement was reached (Dkt. No. 39). On June 27, 2015, Plaintiff filed its

Plaintiff's Motion For Approval Of Class Action Settlement. (Dkt. No. 42.) On September 18, 2015, this Court denied Plaintiff's motion, but instructed the Parties to craft a new agreement under Rule 23(b)(3). (Dkt No. 57 at 24.)

Subsequently, Class Counsel engaged in numerous discussions with Defendant PTL to structure a notice plan consistent with Rule 23(b)(3). (Ex. 1 hereto, Siprut Decl. ¶11.) Plaintiff also gathered information regarding the potential recipients of PTL's faxes. (*Id.* at ¶¶11-13.) Class Counsel contacted Sam Royalty, a former employee of PTL, who stated that PTL obtained motor carrier fax numbers from Carrier411 Services, Inc. ("Carrier411") based on certain criteria, and used these fax numbers to send approximately 180 faxes between mid-December through May 2014. (Affidavit of Sam Royalty ("Sam Aff."), attached hereto as Exhibit 2, ¶¶3-4.) Class Counsel issued third party subpoenas to AT&T (the carrier of PTL's fax line on which the allegedly unlawful faxes were sent) and Carrier411. (Ex. 1 hereto, Siprut Decl. ¶11.) After comparing PTL's transmission logs from AT&T, the fax number database from Carrier441, and the criteria from Mr. Royalty, Class Counsel determined that potentially 893 individuals or entities were sent at least one fax. (*Id.* at ¶13.)

On March 30, 2016, the Parties executed a new settlement agreement. On March 31, 2016, Plaintiff filed its Plaintiff's Motion For Preliminary Approval Of Class Action Settlement. (Dkt. No. 65.) On April 4, 2016, this Court granted that motion. (Dkt. No. 68.) Pursuant to the Court's order granting preliminary approval, notice went out to the class on May 4, 2016, with an exclusion/objection deadline of July 5, 2016. (Dkt. No. 68, ¶15.)

**ARGUMENT**

I.    **Class Counsel Overcame Substantial
      Defenses And Hurdles To Achieve This Settlement.**

      A.    **Defendant Had Significant Defenses Which,
            If Successful, Would Have Resulted In Nothing For The Class.**

Class Counsel expended substantial effort in achieving this settlement on behalf of Class Members. In order to understand the amount of work necessary to settle this case and the risk Counsel had to bear, one must consider PTL's defenses.

PTL denies liability and contends that it has a number of affirmative defenses that would defeat Plaintiff's claim on both substantive and procedural grounds. Primarily, PTL argues that the faxes it sent were not advertisements within the meaning of the TCPA. (Dkt. No. 12.) If PTL was successful, on this basis alone, its conduct would not be a violation of the TCPA. *See* 47 U.S.C. § 227(a)(5) (defining advertisement as "any material advertising the commercial availability or quality of any property, goods, or services").[2] Additionally, PTL asserted numerous

---

[2] *See also Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc.,* 526 F. Supp. 2d 851, 852-53 (N.D. Ill. 2007) (fax inviting business owners to participate in research discussion on new healthcare program sponsored by chamber of commerce was not advertisement; although plaintiff compared fax to pre-textual notification about free seminar where sender's products were promoted, fax was not an "indiscriminate, open ended invitation" to do business with defendant but instead indicated that individuals interested in participating in research study must be qualified and would be subject to pre-screening); *Physician's Healthsource, Inc. v. MultiPlan Servs. Corp.,* No. 12-11693-GAO, 2013 WL 5299134, at *2 (D. Mass. Sept. 18, 2013) ("Based on the four corners of the facsimile, there is no overt advertising . . . nor is there any enticement that would be construed as pretext to advertise commercial products or services."); *Friedman v. Torchmark Corp.,* No. 12-CV-2837-IEG (BGS), 2013 WL 1629084, at *4 (S.D. Cal. Apr. 16, 2013) ("Defendant's message was not aimed at encouraging Plaintiff to engage in future commercial transaction with Defendant to purchase its goods. Rather, Defendant's message informed Plaintiff about a recruiting webinar that could have resulted in an opportunity to sell Defendant's goods, which is akin to an offer of employment."); *NB v. Indus. v. Wells Fargo & Co.,* No. C 10-03203 LB, 2010 WL 4939970 at *9-10 (N.D. Cal. Nov. 30, 2010) (faxes containing information and application relating to Asian-American business leadership award and banquet that were sponsored by sender were not advertisements because they did not mention defendant's

affirmative defenses as part of its initial answer and still asserts, in its amended answer, that the claims of the class members are barred by the applicable statute of limitations. (Dkt. No. 17; Dkt. No. 27 at 11.) The Class would not be able to recover anything if PTL succeeded with its affirmative defense in entirety.

Though Class Counsel has maintained that these defenses can and would be overcome on a contested basis, the risk presented by these defenses is nonetheless present. The settlement balances the risks faced by PTL, the Class, and Class Counsel.

### B. Class Counsel Performed Substantial Work On Behalf Of The Class.

Class Counsel spent 416.4 hours battling PTL and its lawyers. (Ex. 1 hereto, Siprut Decl. ¶24.) Class Counsel's work included, among other things:

- **Pre-Complaint Factual Investigation**. Class Counsel began conducting a factual and legal investigation in May 2014, starting with an analysis of the fax advertisement sent on PTL's behalf.

- **Legal Investigation**. With the initial factual investigation ongoing, Class Counsel investigated the litigation landscape. In addition, Class Counsel researched: (1) choice of law issues; (2) the appropriate venue and potentially applicable statutes, regulations, and common law claims under Illinois and various other states' laws; and (3) the elements and potential defenses for each of the proposed claims. Once the initial factual and legal research had been completed, Class Counsel began: (1) formulating the TCPA claims; (2) drafting, preparing, and filing the Complaint; and (3) engaging in correspondence with the client regarding the Complaint and the case in general.

- **Motion Practice and Discovery**. After appearing in this case, PTL filed an answer to Plaintiff's Complaint. Plaintiff moved to strike many of PTL's affirmative defenses, arguing that PTL's purported affirmative defenses failed to plead sufficient facts and were not cognizable. Shortly thereafter, the Parties exchanged formal discovery and engaged in discussions on the nature of their claims and defenses. Class Counsel researched class certification issues (and potential PTL defenses to class certification), given that a class certification ruling would have been the "make or break" point for a case of this nature. Class Counsel also engaged in extensive investigations in identifying the class members, including contacting: (1) former PTL employee Sam Royalty; (2)

---

products); *Lutz Appellate Servs., Inc. v. Curry,* 859 F. Supp. 180, 181 (E.D. Pa. 1994) (fax about job openings at sender was not an advertisement.)

issuing subpoenas to AT&T and Carrier441 and; (3) reviewing responses to the AT&T and Carrier441 subpoenas.

- **Settlement**. Class Counsel conducted protracted settlement negotiations with PTL. Class Counsel researched and drafted memoranda regarding potential settlement structures, analyzed settlements in similar cases, reviewed materials obtained through settlement discussions and confirmatory discovery, and regularly engaged in telephonic conferences and email exchanges. Class Counsel also engaged in a settlement conference with Magistrate Judge Sidney Schenkier. Only after over a year of negotiations were the Parties able to reach the settlement which provides immediate and direct benefits to the Class.

## II.  Attorneys' Fees Should Be Awarded Based On The Percentage Of The Fund Method.

### A.  The Seventh Circuit Favors The Percentage-Of-Fund Methodology Here.

The Seventh Circuit has repeatedly approved of the percentage of the benefit method as an

equitable means for calculating attorneys' fees in common fund cases.[3] *See In re Synthroid Mktg.*

*Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (instructing district courts to "do their

best to award counsel the market price for legal services, in light of the risk of nonpayment and

the normal rate of compensation in the market at the time") (collecting cases).[4] This long-standing

---

[3] The Seventh Circuit's decisions in *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014), and *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) are not to the contrary. In each of those cases, the courts endorsed basing attorneys' fees on a percentage of the money going to the attorneys and the class, so long as the percentage was no more than 50%. *E.g., NBTY*, 772 F.3d at 781 (reversing attorneys' fee award where it represented 69% of the money going to the class and their counsel); *RadioShack*, 768 F.3d at 622 (reversing fee award where class counsel sought over 55% of the money going to the class and their counsel); *Pella*, 753 F.3d at 726 (reversing fee award where counsel sought 56% of the money going to the class and their counsel).

[4] *See also Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis.") (internal citations omitted); *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client. . . . [I]n large commercial litigation with prospects of multimillion dollar recoveries the percentage frequently is tapered—it might be 33 percent of the first million, 25 percent of the next million, and so on down."); *In re*

-7-

maxim was reaffirmed by the Seventh Circuit just last year. *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 708 (7th Cir. 2015) ("Under the 'common fund' doctrine, an attorney who recovers a common fund for the benefit of a class is entitled to a reasonable portion" of the fund) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

District courts throughout the Seventh Circuit (but particularly here in the Northern District) have consistently approved fee awards in class settlements using a percentage of the fund achieved—including for TCPA class actions, such as the settlement here. *E.g.*, *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 809 (N.D. Ill. 2015) (Holderman, J.) (awarding tiered percentages as attorneys' fees); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 908 (S.D. Ill. 2012) (Gilbert, J.) ("[A] contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price for legal services for a case of similar risk."); *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2015 WL 7450759, at *17 (N.D. Ill. Nov. 23, 2015) (Kennelly, J.) (awarding 36% of the settlement as attorneys' fees); *McCue v. MB Fin., Inc.*, No. 15 CV 988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (Coleman, J.) (awarding one-third of the settlement fund in attorneys' fees, plus costs of litigation); *Abbott v. Lockheed*

---

*Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate"); *McCue v. MB Fin., Inc.*, No. 15 CV 988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) ("Awarding attorneys' fees through a percentage of a common fund is consistent with the need to incentivize lawyers to resolve cases early and to avoid over-litigating them in order to recover a larger fee."); *Beesley v. Int'l Paper Co.*, No. 3:06-CV-703-DRH-CJP, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014) ("When determining a reasonable fee, the Seventh Circuit Court of Appeals uses the percentage basis rather than a lodestar or other basis."); *Will v. Gen. Dynamics Corp.*, No. CIV. 06-698-GPM, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."); *In re Bayou Sorrel Class Action*, 6:04-cv-1101, 2006 WL 3230771, at *3 (W.D. La. Oct. 31, 2006) ("Given the issues likely to arise in computing a lodestar, courts across the country, both federal and state, are retreating from a lodestar analysis in favor of setting common benefit fees at a percentage of the benefit secured . . . .") (collecting cases).

*Martin Corp.*, Case No. 06-cv-701-MJR-DGW, 2015 WL 4398475, at \*2 (S.D. Ill. July 17, 2015) (awarding 33.33% of the fund plus costs); *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230 (GF), 2015 WL 4275540, at \*3 (N.D. Ill. July 13, 2015) (Feinerman, J.) (awarding 33.33% of the fund plus expenses); *Prena v. BMO Fin. Corp.*, No. 15 C 09175, 2015 WL 2344949, at \*1 (N.D. Ill. May 15, 2015) (Chang, J.) (awarding 33.5% of the fund after deducting notice expenses); *Bickel v. Sheriff of Whitley Cnty*, No. 1:08-cv-102-TLS, 2015 WL 1402018, at \*6 (N.D. Ind. March 26, 2015) (awarding 43.7% of the fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at \*5 (N.D. Ill. Mar. 23, 2015) (St. Eve, J.) (awarding tiered percentages as attorneys' fees) *mot. to amend judgment denied,* 2015 WL 2147679 (May 6, 2015); *In re Dairy Farmers of Am., Inc.*, No. 09-cv-3690, MDL No. 2031, 2015 WL 753946, at \*16 (N.D. Ill. Feb. 20, 2015) (Dow, J.) (awarding 33.33% of the fund); *Chapa IV v. Trugreen, Inc.*, No. 13-cv-3957, Dkt. No. 50 (N.D. Ill. Jan. 27, 2015) (Leinenweber, J.) (awarding one-third of the settlement fund as attorneys' fees).[5]

_____

[5] *See also Martin v. Dun & Bradstreet, Inc.*, No. 12-cv-00215, Dkt. 66 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (awarding one third fee payment of distributed fund); *Cummings v Sallie Mae*, No. 12-cv-9984, Dkt. 91 (N.D. Ill. May 30, 2014) (Gottschall, J.) (awarding one-third of the common fund for fees); *Hanley v. Fifth Third Bank*, No. 12-cv-01612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (awarding one third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-cv-01925, Dkt. 243 (N.D. Ill. June 21, 2013) (Bucklo, J.) (approving payment of one-third of common fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-cv-05959, Dkt. 116 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 07-cv-05456, Dkt. 424 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (same); *Saf-TGard Int'l, Inc., v. Seiko Corp. of Am.*, No. 09-cv-00776, Dkt. No. 100 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-cv-05953, Dkt. No. 146 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (same); *Hinman v. M & M Rental Ctr., Inc.*, No. 06-cv-01156, Dkt. No. 225 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (same); *Holtzman v. CCH*, No. 07-cv-07033, Dkt. 33 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-cv-00066, Dkt. No. 39 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (same); *Will v. Gen. Dynamics Corp.*, 06-698-GPM, 2010 WL 4818174, at \*2 (S.D. Ill. Nov. 22, 2010) (stating that, where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, "the normal rate of compensation in the market" is "33.33% of the common fund recovered"); *Berger v. Xerox Corp. Ret. Income*

**B.     Class Counsel Requests 35% Of The
        Common Benefit Provided To The Class.**

With another two weeks left for Class Members to submit claims, the Settlement
Administrator has currently received 38 claims. (Ex. 1 hereto, Siprut Decl. ¶15.) This represents a
4.2553% claims-rate. Because the claims process is ongoing, however, the Settlement
Administrator's costs are not yet finalized. Based on current projections, the Administrator's costs
will be $19,000. (*Id.* at ¶33.) At that number, the $100,000 Settlement Fund will net $79,500 after:
(a) notice and administration expenses; and (b) a $1,500 incentive award to Plaintiff. Plaintiff
respectfully requests that the Court award Class Counsel attorneys' fees in the amount of 35% of
that net figure (well within Seventh Circuit guidelines, as discussed above): $27,825. (At the final
approval stage, Plaintiff will provide an updated figure on final administration costs.) Plaintiff
additionally seeks the reimbursement of out-of-pocket litigation costs, in the amount of $1,996.35.
(Ex. 1 hereto, Siprut Decl. ¶25.) *See City of Greenville*, 904 F. Supp. 2d at 908 (awarding fees *and
costs*); *McCue*, 2015 WL 4522564, at *3 (same); *Abbott v. Lockheed Martin Corp.*, 2015 WL
4398475, at *2 (same).

**C.     The Requested Fees Are Also Appropriate Under The Lodestar Method.**

The Seventh Circuit recently held that when a settlement involves a common fund, as here,
using the lodestar method to award fees is "not warranted." *Craftwood*, 2015 WL 1399367, at *5

---

*Guarantee Plan*, 00-584-DRH, 2004 WL 287902, at *2 (S.D. Ill. Jan. 22, 2004) (finding that 29%
of the gross settlement is a reasonable fee award); *Gaskill*, 160 F.3d at 362-3 (noting that typical
contingency fees are between 33% and 40% and that "[s]ome courts have suggested 25% as a
benchmark figure for a contingent-fee award in a class action"); *Meyenburg v. Exxon Mobil Corp.*,
3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the
cost of litigation) is the standard contingent fee percentages in this legal marketplace for
comparable commercial litigation."); *Summers v. UAL Corp. ESOP Comm.*, 03-cv-1537, 2005 WL
3159450, at *2 (N.D. Ill. Nov. 22, 2005) (finding that attorneys' fees amounting to 16% of the
gross settlement "is clearly within the range of what has been deemed reasonable by the Seventh
Circuit").

-10-

(citing *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014)); *Gress v. Premier Healthcare Exchange, Inc.*, No. 14-cv-501, Dkt. No. 94 (N.D. Ill. Sept. 11, 2015) (granting final approval and awarding fees under the percentage method, without requiring a lodestar cross-check). That being said, a lodestar cross-check further supports this fee request.

To determine the reasonableness of attorneys' fees under the lodestar method, the first step is to calculate a base lodestar amount by "multiplying a reasonable hourly rate by the number of hours reasonably expended." *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010) (citing *Hensley v. Eckhart*, 461 U.S. 424, 433-37 (1983)). As detailed in the accompanying declaration, the hourly rates utilized by Class Counsel's attorneys and legal staff: (a) have been previously approved by courts throughout the country and this district; (b) are the same hourly rates charged by Class Counsel to hourly clients; and (c) are consistent with the median hourly rate in the legal market based on the hourly rates charged in other cases by attorneys with similar experience, skill and reputation. (Ex. 1 hereto, Siprut Decl. ¶¶26-31.)

If the Court elects to consider Class Counsel's lodestar in determining a fee award, the time summary provided in Class Counsel's accompanying Declaration is sufficient to provide a basis for that fee request. The Supreme Court has explicitly held that:

> Trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation.

*Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) (internal quotations omitted). Class Counsel's declaration, and the time records summarized therein, are sufficient for establishing lodestar figures.

In class action cases for which a lodestar is considered, it is typically adjusted using a multiplier to take into account various factors. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988). These factors include "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau*, 592 F.3d at 748. When applying a multiplier to the base lodestar amount, courts should also consider the risk plaintiff's counsel assumes in recovering nothing. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975-76 (7th Cir. 1991) (remanding case for recalculation of attorneys' fees because the trial court failed to award a risk multiplier). Multipliers can range from two to four or even higher. *See In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (applying a lodestar multiplier of four to lead counsel's lodestar and two to other counsels' lodestar). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Id.* (citing *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir.1999)).

To date, three attorneys at Class Counsel's firm have spent 416.4 hours collectively in prosecuting this action for a total lodestar figure of $179,810 (Ex. 1 hereto, Siprut Decl. ¶¶20-24.)[6]

---

[6] Of these 416.4 hours, 162.4 hours were dedicated to negotiating, drafting, editing, and preparing the Parties' first Settlement Agreement and Plaintiff's Motion For Approval Of Class Settlement (Dkt. No. 42), dated June 25, 2015, and June 27, 2015, respectively. (*See* Ex. R to Siprut Decl.) The Settlement Agreement and Plaintiff's Motion For Approval Of Class Settlement were denied on September 28, 2015 (Dkt. No. 57). Absent time spent on the first Settlement Agreement and Motion For Approval Of Class Settlement, attorneys at Class Counsel's firm have spent 254 hours collectively prosecuting this action for a total lodestar of $107,855 – a figure nearly four times as great as the $27,825 Class Counsel requests here.

In addition, Class Counsel has incurred $1,996.35 in unreimbursed costs to date. (*Id.* ¶25.) *See City of Greenville*, 904 F. Supp. 2d at 908 (awarding fees *and costs*); *McCue*, 2015 WL 4522564, at *3 (same); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (same). However, Class Counsel is seeking $27,825 in attorneys' fees, which is ***only 15.5%*** of Class Counsel's base lodestar.[7] Because courts routinely use positive multipliers in awarding fees, awarding 35% of the Class Fund—with a ***negative*** multiplier—is certainly reasonable considering the risk of non-recovery and the excellent result achieved. *See Harman*, 945 F.2d at 975 (noting that a risk "multiplier is, within the court's discretion, appropriate when counsel assume a risk of non-payment in taking a suit" and "[m]ultipliers anywhere between one and four . . . have been approved"); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. at 327 (applying a lodestar multiplier of four to lead counsel's lodestar and two to other counsels' lodestar); *In re Brand Name Prescription Drugs Antitrust Litig.*, 2000 WL 204112, (N.D. Ill. Feb. 9, 2000) (awarding $91 million above lodestar and noting that "[an] award of more than two times the lodestar calculation is believed to be fair and just in these circumstances"). Accordingly, the requested fee award of 35% of the Class Fund (approximately $27,825) and attorney costs of $1,996.35 is reasonable.

## III. The Requested Incentive Award To The Class Representative Plaintiff Is Proper.

Plaintiff requests that it, as the class representative, receive an incentive award of $1,500. This figure was the result of a negotiated compromise. The rationale for awarding incentive payments to named plaintiffs is that they should be compensated for the expense and risk they have incurred in conferring a benefit on other members of the class. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005). Incentive awards are appropriate "to encourage or induce an individual to participate" in a class action lawsuit. *Id.*

---

[7] That figure was calculated by dividing $27,825 by $179,810.

Incentive awards in similar class actions demonstrate that this amount is reasonable. *See, e.g.*, *In re Sw. Airlines Voucher Litig.*, 2013 WL 5497275, at *1 (N.D. Ill. Oct. 3, 2013) (class representative received $15,000 incentive award) *amended on other grounds,* 2014 WL 2809016 (N.D. Ill. June 20, 2014); *Cook*, 142 F.3d at 1016 (awarding $25,000 incentive award); *Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) ($30,000 awarded from settlement fund of $10 million).

Plaintiff has contributed substantially to this litigation and has invested considerable time to do so. (Ex. 1 hereto, Siprut Decl. ¶3.) Plaintiff's agents spent several hours with Class Counsel on the telephone discussing the case, and the scope of the settlement eventually achieved. (*Id.*) Plaintiff reviewed many documents exchanged between Plaintiff and PTL, including the Complaint, Settlement Agreement, and other documents. Plaintiff was consulted on the accuracy of the statements made in these documents and the veracity of the claims. (*Id.*) Plaintiff worked with Class Counsel on responding to PTL's discovery requests, reviewed draft discovery responses for accuracy, and conferred with counsel again before amending its discovery responses. (*Id.*) Plaintiff's corporate representative dedicated his personal and professional time to this matter, committing all necessary efforts to assist in the preparation, litigation, and settlement of this case on behalf of Plaintiff and the putative Class. (*Id.*)

## CONCLUSION

For the reasons set forth above, Class Counsel respectfully requests that the Court enter an Order awarding: (a) attorneys' fees in the amount of 35% of the Class Fund: $27,825.00; (b) costs in the amount of $1,996.35; and (c) as an incentive, $1,500 to the class representative.

Dated: June 21, 2016

Respectfully submitted,

By: *s/ Joseph J. Siprut*

Joseph J. Siprut
*jsiprut@siprut.com*
John S. Marrese
*jmarrese@siprut.com*
Ke Liu
*kliu@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois  60602
Phone: 312.236.0000
Fax: 312.241.1260
**www.siprut.com**

*Counsel for Plaintiff and the*
*Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Motion For Attorneys' Fees, Costs And Incentive Award** was filed this 21st day of June 2016 via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.

*/s/ Joseph J. Siprut*
