**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GROK LINES, INC., individually and on behalf of all others similarly situated, | ) ) ) | Case No. 14-cv-8033 |
| Plaintiff, | ) ) | Hon. Edmond E. Chang |
| v. | ) ) | Hon. Sidney Schenkier |
| PASCHALL TRUCK LINES, INC., a Kentucky corporation, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Joseph J. Siprut
*jsiprut@siprut.com*
Ke Liu
*kliu@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

*Counsel for Plaintiff*
*and the Settlement Class*

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

BACKGROUND ...........................................................................................................................1

ARGUMENT .................................................................................................................................5

I. COMPONENTS OF THE SETTLEMENT ......................................................................5

    A. The Settlement Class ...............................................................................................5

    B. Benefit To Settlement Class Members ...................................................................5

    C. Incentive Award To Class Representative ...............................................................6

    D. Attorneys' Fees And Costs .....................................................................................6

II. THE SETTLEMENT CLASS SHOULD BE CERTIFIED
BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23 ..............................7

    A. Numerosity – F.R.C.P. 23(a) ..................................................................................7

    B. Commonality/Predominance – F.R.C.P. 23(a)(2) and 23(b)(3)..............................9

    C. Typicality – F.R.C.P. 23(a)(3) .............................................................................11

    D. Adequacy Of Representation – F.R.C.P. 23(a)(4) ...............................................12

    E. Superiority – F.R.C.P. 23(b)(3) ...........................................................................13

III. THE SETTLEMENT IS FAIR
AND SHOULD RECEIVE FINAL APPROVAL ...........................................................14

    A. Strength Of The Case Measured Against The Settlement ....................................16

    B. The Complexity, Length, And Expense Of Continued Litigation ........................18

    C. The Settlement Class' Reaction And Lack Of Opposition To The Settlement .....18

    D. Class Counsel's Opinion .......................................................................................20

    E. The Stage Of The Proceedings And The Amount Of Discovery Completed ........20

IV. THE COURT-APPROVED NOTICE PROGRAM SATIFIES DUE PROCESS............21

CONCLUSION ............................................................................................................................22

i

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) .................................................................................................. 7, 13

*Carson v. Am. Brands, Inc.,*
    450 U.S. 79 (1981) ........................................................................................................ 15

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) .................................................................................................... 9

**United States Circuit Court of Appeals Cases**

*Armstrong v. Bd. Of Sch. Dirs. Of the City of Milwaukee,*
    616 F.2d 305 (7th Cir. 1980). ................................................................................. 14, 15

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.,*
    747 F.3d 489 (7th Cir. 2014) ......................................................................................... 8

*Butler v. Sears, Roebuck & Co.,*
    727 F.3d 796 (7th Cir. 2013). ....................................................................................... 10

*Carnegie v. Household Int'l, Inc.,*
    376 F.3d 656 (7th Cir. 2004). ....................................................................................... 13

*CE Design Ltd. v. King Architectural Metals, Inc.,*
    637 F.3d 721 (7th Cir. 2011). ....................................................................................... 12

*Du Puy v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor,*
    519 F.2d 536 (7th Cir. 1975). ....................................................................................... 14

*E.E.O.C. v. Hiram Walker & Sons, Inc.,*
    768 F.2d 884 (7th Cir. 1985) .................................................................................. 15, 16

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.,*
    128 F.3d 1074 (7th Cir. 1997) ...................................................................................... 15

*In re Corrugated Container Antitrust Litig.,*
    643 F.2d 195 (5th Cir. 2010) ........................................................................................ 21

*Ira Holtzman, C.P.A. v. Turza,*
    728 F.3d 682 (7th Cir. 2013) ........................................................................................ 10

*Isby v. Bayh,*
    75 F.3d 1191 (7th Cir. 1996) .............................................................................. 14, 15, 16

*Marcial v. Coronet Ins. Co.*,
    880 F.2d 954 (7th Cir. 1989) .......................................................... 8

*Patterson v. Gen. Motors Corp.*,
    631 F.2d 476 (7th Cir. 1980) .......................................................... 9

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) .......................................................... 6

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ........................................................ 9

*Swanson v. Am. Consumer Indus., Inc.*,
    415 F.2d 1326 (7th Cir. 1969) ........................................................ 8

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ................................................... 15, 16

**United States District Court Cases**

*Allen v. JPMorgan Chase Bank, N.A.*,
    No. 13-cv-80285, Dkt. No. 98 (N.D. Ill. Oct. 21, 2015)................... 19

*Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*,
    235 F. Supp. 2d 816 (N.D. Ill. 2002) ............................................ 15

*Baxter v. Kawasaki Motors Corp.*,
    259 F.R.D. 336 (N.D. Ill. 2009).................................................... 11

*Bayat v. Bank of the West*,
    No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ............................ 19

*Couser v. Comenity Bank*,
    No. 12CV2484-MMA-BGS, 2015 WL 5117082 (S.D. Cal. May 27, 2015)................... 19

*Fletcher v. ZLB Behring LLC*,
    245 F.R.D. 328 (N.D. Ill. 2006).................................................... 10

*Friedman v. Torchmark Corp.*,
    No. 12-CV-2837-IEG (BGS), 2013 WL 1629084 (S.D. Cal. Apr. 16, 2013) ................ 17

*Gehrich v. Chase Bank USA, N.A.*,
    No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) ..................................... *passim*

*Gomez v. Ill. State Bd. of Educ.*,
    117 F.R.D. 394 (N.D. Ill. 1987)..................................................... 12

iii

*Hinman v. M & M Rental Ctr., Inc.*,
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ............................................................. 12

*Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*,
    988 F. Supp. 1130 (N.D. Ill. 1997) ............................................................. 14

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................. 19

*In re Capital One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ....................................................... 19, 20

*In re Mexico Money Transfer Litig.*,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ............................................................. 19

*In re Neopharm, Inc. Secs. Litig.*,
    225 F.R.D. 563 (N.D. Ill. 2004) ............................................................. 11

*In re Sw. Airlines Voucher Litig.*,
    No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ......................................... 19

*In re Synthroid Marketing Litig.*,
    188 F.R.D. 287 (N.D. Ill. 1999) ............................................................. 10

*Kaufman v. Am. Express Travel Related Servs., Co.*,
    No. 07-CV-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016) ........................................... 6

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) ....................................................... *passim*

*Lutz Appellate Servs. Inc. v. Curry*,
    859 F. Supp. 180 (E.D. Pa. 1994) ............................................................. 17

*Maxwell v. Arrow Fin. Servs., LLC*,
    No. 03 C 1995, 2004 WL 719278 (N.D. Ill. Mar. 31, 2004) ............................................ 8

*NB Indus. v. Wells Fargo & Co.*,
    No. C 10-03203 LB, 2010 WL 4939970 (N.D. Cal. Nov. 30, 2010) ............................... 17

*Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.*,
    No. 3:14-CV-00645-ST, 2016 WL 54678 (D. Or. Jan. 5, 2016) ...................................... 19

*Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc.*,
    526 F. Supp. 2d 851 (N.D. Ill. 2007) ............................................................. 16

*Physician's Healthsource, Inc. v. MultiPlan Servs. Corp.,*
No. 12-11693-GAO, 2013 WL 5299134 (D. Mass. Sept. 18, 2013) ............................... 16

*Pope v. Harvard Banchares, Inc.,*
240 F.R.D. 383 (N.D. Ill. 2006) ........................................................................... 8

*Radmanovich v. Combined Ins. Co. of Am.,*
216 F.R.D. 424 (N.D. Ill. 2003) .......................................................................... 11

*Rose v. Bank of Am. Corp.,*
No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ...................... 19

*Scholes v. Stone, McGuire, & Benjamin,*
143 F.R.D. 181 (N.D. Ill. 1992) ........................................................................... 9

*Schulte v. Fifth Third Bank,*
805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................................... 20, 21

*Smith v. Nike Retail Servs., Inc.,*
234 F.R.D. 648 (N.D. Ill. 2006) ........................................................................... 8

*Toney v. Rosewood Care Ctr., Inc. of Joliet,*
No. 98 C 0693, 1999 WL 199249 (N.D. Ill. Mar. 31, 1999) ........................................ 10

*Whitten v. ARS Nat'l Servs. Inc.,*
No. 00 C 6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001).......................................... 9

*Wilkins v. HSBC Bank Nevada, N.A.,*
No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)............................................... 19

## STATUTES AND FEDERAL RULES

47 U.S.C. § 227 ................................................................................................. 16

Fed. R. Civ. P. 23 .................................................................................. *passim*

## OTHER AUTHORITIES

Manual for Complex Litigation (Fourth) (2004) ................................................. 21

Newberg On Class Actions (4th ed. 2001) ........................................................ 8

Newberg On Class Actions (4th ed. 2002) ........................................................ 8

Pursuant to Fed. R. Civ. P. 23, Plaintiff Grok Lines, Inc. ("Plaintiff"), by its counsel, respectfully submits its Motion For Final Approval Of Class Action Settlement (the "Motion"). For the reasons detailed below, Plaintiff respectfully requests that the Court enter an Order granting final approval of the class action settlement ("Settlement") as fair, reasonable, and adequate.[1]

## INTRODUCTION

Pursuant to this Court's recommendation (Dkt. No. 57 at 29), Plaintiff and Defendant Paschall Truck Lines, Inc. ("Defendant" or "PTL") (collectively, the "Parties") have entered into an Agreement in the above-referenced matter. The Agreement—a product of extensive discovery and negotiations over the course of several months—settles the dispute relating to Plaintiff's allegation that PTL sent unsolicited facsimiles to Plaintiff and the Class in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

If approved, the Settlement will provide meaningful, substantial monetary relief to the Settlement Class in the form of a $100,000 non-reversionary, common fund (the "Settlement Fund"). In fact, as it currently stands, the Settlement will *more than fully* compensate the Class Members that have submitted claims. Furthermore, despite notice having reached an outstanding 93.96% of the Class, there has *not been a single objector* and only two requests for exclusion.

As explained more fully below, the Settlement is fair, adequate, and reasonable, and should now receive final approval.

## BACKGROUND

On October 15, 2014, Plaintiff brought a putative class action against PTL in the United States District Court for the Northern District of Illinois, case number 1:14-cv-08033, alleging

---

[1] Unless otherwise stated, all terms in this brief are intended to have the definitions assigned to them in the Settlement Agreement, attached hereto as Exhibit 1.

causes of action against PTL for purportedly sending unsolicited fax advertisements to unwilling participants with deficient opt-out notices. (Dkt. No. 1.)

On November 12, 2014, PTL moved to dismiss Plaintiff's Complaint for failure to state a claim under the TCPA and failure to state a common-law conversion claim. (Dkt. No. 12.) On November 17, 2014, the Court issued an order granting in part, and denying in part PTL's motion. The Court dismissed Plaintiff's conversion claim, but allowed Plaintiff to proceed with its claims under the TCPA. (Dkt. No. 16.)

On November 24, 2014, PTL filed its Answer to Plaintiff's Complaint, denying that PTL had violated either the TCPA or common law. PTL also raised several affirmative defenses, including failure to state a claim, violation of Due Process of Law under the United States Constitution, and equitable estoppel. (Dkt. No. 17.)

On December 1, 2014, the Court ordered that the Parties make their Rule 26(a)(1) disclosures by December 15, 2014, and issue their first round of discovery requests by January 5, 2015. (Dkt. No. 23.) On December 15, 2014, each Party made its Rule 26(a)(1) disclosures. (Declaration of Joseph J. Siprut ("Siprut Decl."), attached hereto as Exhibit 2, ¶8.)Also on December 15, 2014, Plaintiff filed a motion to strike each of PTL's affirmative defenses. (Dkt. No. 24.) On December 19, 2014, the Court denied Plaintiff's motion to strike without prejudice. (Dkt. No. 26.)

On December 19, 2014, PTL served its First Set Of Requests For Admission on Plaintiff. (Siprut Decl. ¶9.) On January 5, 2015, Plaintiff served its First Set Of Interrogatories, First Set Of Requests For Admission, and First Set Of Requests For Production on PTL. (*Id.*) On January 15, 2015, Plaintiff responded to PTL's First Set Of Requests For Admission. (*Id.*)

In January 2015, the Parties discussed a proposed amendment to PTL's Answer to cure alleged deficiencies in PTL's affirmative defenses. (*Id.* ¶10.) On January 20, 2015, PTL filed its Amended Answer and Affirmative Defenses, denying that PTL had violated the TCPA. (Dkt. No. 27.) Also on January 20, 2015, the Parties held a Local Rule 37.2 conference to discuss Plaintiff's written responses to PTL's Requests for Admission. (Siprut Decl. ¶10.) Following the conference, Plaintiff amended its responses. (*Id.*)

Between February and May 2015, the Parties engaged in substantive negotiations on whether this matter could be resolved on a class-wide basis. (*Id.* ¶11.) PTL represented that the class size was approximately 200. (*Id.*) PTL, however, did not have records showing exactly to whom the faxes were sent and, hence, could not objectively show whether the class size was some number greater than 200. (*Id.*) In the same vein, PTL continued to assert that a class cannot be certified on a *contested* basis because there was no proof of exactly who received a fax. (*Id.*)

On June 3, 2015, after being unable to agree to all material terms of a settlement agreement under a Rule 23(b)(2) framework, the Parties held a settlement conference with Magistrate Judge Sidney I. Schenkier, where a settlement was reached. (Dkt. No. 39.) After the Parties finalized that settlement, on June 27, 2015, Plaintiff moved for court approval. (Dkt. No. 42.) On September 18, 2015, this Court denied approval of that settlement, but instructed the Parties to craft a new agreement under Rule 23(b)(3). (Dkt. No. 57 at 24.)

Subsequently, Class Counsel engaged in numerous discussions with PTL's counsel to structure a notice plan consistent with Rule 23(b)(3). (Siprut Decl. ¶13.) Plaintiff issued third party subpoenas to AT&T, the carrier of PTL's fax line on which the allegedly unlawful faxes were sent, and Carrier411 Services, Inc. ("Carrier411"), the third party from whom PTL obtained the fax numbers. (*Id.*) In addition, Class Counsel contacted PTL's former employee, Sam Royalty, who

sent the faxes. (*Id.* ¶14.) Mr. Royalty informed Class Counsel that he obtained the fax numbers from Carrier411's online database, but limited the fax numbers based on several criteria. (*Id.*) Consistent with PTL's prior representation, Mr. Royalty stated that he sent faxes to approximately 180 individuals or entities. (*Id.* ¶15.) PTL's records, however, were not clear. After comparing PTL's transmission logs from AT&T, the database from Carrier411, and the criteria from Mr. Royalty, Plaintiff determined that potentially up to ***893*** individuals or entities were sent at least one fax. *(Id.)*

On March 30, 2016, the Parties executed a new settlement agreement. (*Id.* ¶16.) On March 31, 2016, Plaintiff moved for preliminary approval of the new settlement that would provide notice for these 893 individuals or entities and allow each to submit a claim for a *pro rata* share of the Settlement Fund ($100,000), after deduction of settlement administration and notice costs (approximately $19,000), an attorneys' fee award (35% of the Settlement Fund after deduction of the settlement administration costs and Plaintiff's incentive award; approximately $27,825), and Plaintiff's incentive award ($1,500.) (Dkt. No. 65.) On April 4, 2016, this Court granted the motion, and set the Final Approval Hearing for October 5, 2016, at 10:00 a.m. (Dkt. No. 68.)

Pursuant to the Court's order, notice went out to the class on May 9, 2016, with an exclusion/objection deadline of July 5, 2016. (Declaration of Ronald A. Bertino, ("Bertino Decl."), attached hereto as Exhibit 3, ¶¶8-9, 13-14.) On June 21, 2016, Plaintiff submitted its motion for attorneys' fees, costs, and incentive award. (Dkt. No. 74.) As of the filing of this motion, the Settlement Administrator has received 41 timely approved claims, one late claim, two requests for

exclusion, and no objections.[2] (Bertino Decl. ¶¶13-15.) This Settlement is now poised for final approval. Accordingly, Plaintiff now submits its brief in support of the Settlement.

## ARGUMENT

### I.    COMPONENTS OF THE SETTLEMENT.

#### A.    The Settlement Class.

The Settlement Class provisionally certified by this Court on April 4, 2016, is defined as:

> All individuals or entities who, up to April 4, 2016, were sent one or more facsimile in the form of Exhibit A to the Complaint from or on behalf of Defendant or who own the fax machines to which the facsimiles were sent.

(Dkt. No. 68 at 2.)

#### B.    Benefits To Settlement Class Members.

Under the Settlement, each Settlement Class Member who submits an Approved Claim shall receive one pro rata share of the $100,000 Settlement Fund, after (i) the Notice and Administration Costs (approximately $19,000); (ii) Plaintiff's requested Attorneys' Fee Award (35% of the Fund *after* deduction of Settlement Administration Costs and Plaintiff's Incentive Award; approximately $27,825); (iii) reimbursement of out-of-pocket litigation costs ($1,996.35); and (iv) the Incentive Award ($1,500) have been deducted from the Settlement Fund (the "Net Settlement Fund"). Assuming this Court grants Plaintiff's requested attorneys' fees of $27,825, Plaintiff's requested reimbursement of out-of-pocket litigation costs of $1,996.35, and Plaintiff's requested incentive award of $1,500, Class Counsel estimates that the Net Settlement Fund will

---

[2] Class Counsel recommends the Court approve the sole late claim. Assuming this late claim is approved, the 42 Approved Claims constitute a 4.7% claims rate (42 / 893).

be equal to $49,678.65. Accordingly, the 42 Settlement Class Members that submitted claims will each receive approximately $1,182.82 – an outstanding result.[3]

### C.    Incentive Award to Class Representative.

Subject to Court approval, Plaintiff requests a service award of $1,500 in recognition of its contributions to the Class, the time it spent assisting with the prosecution of this case, and the risk it incurred in commencing the action, both financial and otherwise. (Dkt. No. 74.)

### D.    Attorneys' Fees and Costs.

Class Counsel requests total fees in the amount of 35% of the Fund after the deduction of notice and administration costs and the incentive award. Using the current administration costs of $19,000, Class Counsel's Fee Award would be $27,825 (($100,000 – $19,000 – $1,500) x 0.35 = $27,825). This amount is in line the ratio articulated by the Seventh Circuit in *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014): "(1) the fee to (2) the fee plus what the class members received." Here, the *Redman* ratio is 35.9% ($27,825 / ($27,825 + $49,678.65)). *See Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at *13 (N.D. Ill. Mar. 2, 2016) (Gottschall, J.) (awarding fees with a *Redman* ratio of 34.8%, even where settlement was amended *several* times to address deficiencies). In addition, the requested attorneys' fees ($27,825) are only ***15.4%*** of Class Counsel's base lodestar ($179,810).[4] (Siprut

---

[3] If the one late claim is not approved by this Court, then each claimant will instead receive $1,211.67.

[4] Class Counsel's base lodestar of $179,810 accounts for 416.4 hours worked on this case. (Dkt. No. 74 at 12.) Of these 416.4 hours, 162.4 hours were dedicated to negotiating, drafting, editing, and preparing the Parties' first Settlement Agreement and Plaintiff's Motion For Approval Of Class Settlement (Dkt. No. 42), dated June 25, 2015 and June 27, 2015, respectively. (*See* Dkt. No. 74 at 12, n. 6.) The Settlement Agreement and Plaintiff's Motion For Approval Of Class Action Settlement were denied on September 28, 2015. (Dkt. No. 57.) Absent time spent on the first Settlement Agreement and Motion For Approval Of Class Settlement, attorneys at Class Counsel's firm have spent 254 hours collectively prosecuting this action for a total lodestar of

Decl. In Supp. Of Plaintiff's Mot. For Attorneys' Fees, Costs, And Incentive Award (Dkt. No. 74-1) ¶¶20-24.) Hence, the requested fees are also appropriate under the lodestar methodology. Additionally, Class Counsel seeks reimbursement of out-of-pocket litigation costs, in the amount of $1,996.35. (*Id.* ¶25.)

## II.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23.

To certify a class under Rule 23, the Court must find that the proposed class meets the elements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2) or (3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997) ("In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). Rule 23(b)(1) . . . ."). "Settlement is relevant to class certification" and is "a factor in the calculus." *Id.* at 619, 622. Indeed, the Supreme Court "has expressly approved the use of the class settlement device." *Id.* at 618. Plaintiff seeks conditional certification of the Settlement Class under Rule 23(b)(3), its appointment as class representative solely for the purposes of the Settlement, and appointment of its counsel as Class Counsel solely for the purposes of the Settlement.

Plaintiff requests that the Court, for the purposes of settlement, certify the Settlement Class defined above. As discussed further below, the proposed Settlement Class meets each of the requirements of Rules 23(a) and (b), and therefore, certification is appropriate.

### A.     Numerosity – Federal Rule Of Civil Procedure 23(a).

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is neither a specific number

---

$107,855 – a figure still nearly *four times* larger than the $27,825 attorneys' fees requested by Plaintiff. (Dkt. No. 74 at 12, n. 6.)

required to satisfy this requirement, nor is a plaintiff required to state the exact number of potential

class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006) ("[A]

plaintiff need not identify each class member or even provide an exact number of class members

to satisfy that element.") (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954 (7th Cir. 1989)); 3 Alba

Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2001). Instead,

courts are permitted "to make common-sense assumptions that support a finding of numerosity."

*Maxwell v. Arrow Fin. Servs., LLC*, No. 03 C 1995, 2004 WL 719278, at *2 (N.D. Ill. Mar. 31,

2004). "[A] class can be certified without determination of its size, so long as it's reasonable to

believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold*

*Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir.

2014). "Although no magic number exists for satisfying the numerosity requirement, the Seventh

Circuit has held that '[e]ven if the class were limited to 40 [members] … that is a sufficiently large

group to satisfy Rule 23(a) where the individual members of the class are widely scattered and

their holdings are generally too small to warrant undertaking individual actions.'" *Gehrich v.*

*Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *4 (N.D. Ill. Mar. 2, 2016)

(Feinerman, J.) (quoting *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir.

1969)); *Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006) (granting class

certification, distinguishing that "impracticable" does not mean "impossible," but rather extremely

difficult and inconvenient).

In this case, 893 individuals or entities, at most, were: (a) sent one or more facsimiles

similar to the fax attached to the Complaint as Exhibit A, from or on behalf of PTL; or (b) who

own the fax machines to which the facsimiles were sent. (Siprut Decl. ¶15.)  Accordingly, the

Class satisfies the numerosity requirement. *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th

ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

**B.**     **Commonality/Predominance –
Federal Rule Of Civil Procedure 23(a)(2) And 23(b)(3).**

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts recognize that there may be factual differences between class members, but "factual variations among class members' claims" do not themselves "defeat the certification of a class." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992) (citing *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980), *cert. denied*, 451 U.S. 914 (1980)), *cert. denied*, 506 U.S. 1051 (1993). In fact, the threshold for commonality is not high. *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992) (granting class certification, characterizing the commonality requirement as "a low hurdle" easily surmounted). Rather, commonality exists if a common nucleus of operative fact exists, even if as to one question of law or fact. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) ("[C]ommonality requires that the claims of the class simply "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."); *Whitten v. ARS Nat'l Servs. Inc.*, No. 00 C 6080, 2001 WL 1143238, *3 (N.D. Ill. Sept. 27, 2001) (commonality is often found where "Defendants have engaged in standardized conduct toward the members of the proposed class").

The Settlement Class shares common questions of fact and law that predominate over issues affecting only individual Settlement Class Members. Those common factual and legal issues include:

a.   Whether PTL engaged in a pattern of sending unsolicited facsimile advertisements;

b.   Whether PTL's facsimiles constitute advertisements;

c.   Whether PTL sent, or caused to be sent, the facsimiles at issue;

d.   The manner in which PTL compiled or obtained their list of facsimile numbers; and

e.   Whether PTL thereby violated the TCPA.

Additionally, Rule 23(b)(3) provides that a class action may be maintained where the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC,* 245 F.R.D. 328, 331-32 (N.D. Ill. 2006); *Chase Bank*, 2016 WL 806549, at *5 (N.D. Ill. Mar. 2, 2016) ("A proposed class satisfies Rule 23(b)(3) if 'the questions of law or fact common to class members predominate over any questions affecting only individual members . . . .'") (citation omitted). "Predominance . . . is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013). A class action is the more efficient procedure for determining liability and damages in a case such as this, where "loss, and the statutory remedy, are the same for all recipients[.]" *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013), *reh'g denied* (Sept. 24, 2013), *cert. denied,* 134 S. Ct. 1318 (2014).

In this case, common questions predominate for the Settlement Class because PTL's alleged unlawful conduct presents common questions with regard to all members of the proposed Settlement Class. *See Holtzman,* 728 F.3d at 684 ("Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients."); *In re Synthroid Marketing Litig.,* 188 F.R.D. 287, 292 (N.D. Ill. 1999) (acknowledging that plaintiff's allegations of defendant's standardized conduct involved "'a common course of conduct that leads to injury of all the class members.'") (quoting *Toney v. Rosewood Care Ctr., Inc. of Joliet,* No. 98 C 0693,

- 10 -

1999 WL 199249, at *9 (N.D. Ill. Mar. 31, 1999)). Thus, in the context of the proposed class-wide settlement, the predominance requirement is satisfied because liability and damages would have been decided predominantly, if not entirely, based on *common* evidence of PTL's conduct. *Chase Bank,* 2016 WL 806549, at *4 (Feinerman, J.) ("Each class member suffered roughly the same alleged injury: recipient of at least one phone call or text message from Chase to her cell phone [in violation of the TCPA.]"); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 491 (N.D. Ill. 2015) (Kennelly, J.) ("Each class member suffered the same alleged injury, namely, recipient of at least one prerecorded prescription refill reminder call to the class member's cellular telephone without the recipient's prior express consent[in violation of the TCPA.]"); *Baxter v. Kawasaki Motors Corp.*, 259 F.R.D. 336, 343 (N.D. Ill. 2009) ("when the case involves standardized conduct towards the members of the class, predominance often is satisfied").

### C.    Typicality – Federal Rule Of Civil Procedure 23(a)(3).

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if the plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id.* "Typicality does not mean identical, and the typicality requirement is liberally construed." *In re Neopharm, Inc. Secs. Litig.*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) (citation omitted).

Here, typicality is easily met. Plaintiff and the Settlement Class all received unsolicited facsimile advertisements with deficient opt-out notices from or on behalf of PTL, and alleged that PTL sent, or had sent on its behalf, the facsimiles in violation of the TCPA, thereby entitling

Plaintiff and the Settlement Class to statutory damages. *Walgreen,* 311 F.R.D. at 491 ("Typicality is satisfied when the named plaintiff's claim and those of the class members have a common legal theory, even if there are some factual variations."); *Chase Bank,* 2016 WL 806549, at *4 ("Because 'typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members,' the fact that some class members . . . may have consented to the calls and alerts, or that some class members signed arbitration clauses extinguishing their TCPA claims, does not vitiate the typicality of the class representatives' claims.") (quoting *CE Design Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721, 725 (7th Cir. 2011)). Moreover, there are no defenses that pertain to Plaintiff that would not also pertain to the Settlement Class. Accordingly, Plaintiff's claims are typical of the other Settlement Class Members' claims.

### D. Adequacy Of Representation – Federal Rule Of Civil Procedure 23(a)(4).

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, class representatives must establish that they: "(1) [have] a sufficient stake in the outcome to ensure zealous advocacy, and [have] no claims antagonistic to or conflicting with the claims of other class members, and (2) [are] represented by qualified, experienced counsel." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987) (finding class counsel was adequate, stating if "attorneys have been found to be adequate in the past, it is persuasive evidence that they will be adequate again.").

- 12 -

Here, Plaintiff's interests are consonant with the interests of the Settlement Class—obtaining relief from PTL for its alleged unlawful transmission of facsimiles, and ensuring that PTL does not continue such conduct in the future. Plaintiff has no interests antagonistic to the interests of the other members of the Settlement Class. (Siprut Decl. ¶22.) Moreover, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have significant experience in consumer class actions involving similar issues, scope, and complexity. (*See id.* ¶21; Siprut PC Firm Resume (attached as Exhibit A to the Siprut Declaration).) Accordingly, Plaintiff and its counsel would adequately represent the proposed Class. *Walgreen*, 311 F.R.D. at 492 ("[C]ass counsel have performed satisfactorily on behalf of the class and have demonstrated their competence in representing the class's interests.").

### E.    Superiority – Federal Rule of Civil Procedure 23(b)(3).

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b). Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). When settling a class action, Plaintiff does not have to prove manageability under Rule 23(b)(3) as if the case were being fully litigated because settlement may "eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 660 (7th Cir. 2004) (citing *Amchem,* 521 U.S. at 117)).

- 13 -

The present class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the other Settlement Class Members' claims. The burden and expense of individual prosecution necessitated by PTL's actions makes a class action superior to other available methods of resolution. Thus, absent a class action, Plaintiff contends it would be difficult, if not impossible, for individual members of the Settlement Class to obtain effective relief. In sum, the Settlement Class meets the requirements of Rule 23(a) and 23(b)(3) and should be certified.[5]

## III. THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE FINAL APPROVAL.

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) ("We also consider the facts "in the light most favorable to the settlement"); *Armstrong v. Bd. Of Sch. Dirs. Of the City of Milwaukee,* 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."); *Du Puy v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor,* 519 F.2d 536, 541 (7th Cir. 1975) ("[G]eneral policy is in favor of settlement of litigation by compromise and settlement procedures"). Courts look upon the settlement of lawsuits with favor because such settlements promote "the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome." *Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997). Indeed, compromise is particularly appropriate in complex class action cases. *See id.*

---

[5]As detailed in the Settlement Agreement, Defendant does not oppose the request for class certification solely for the purposes of settlement.

In determining whether a district court should exercise its discretion to approve a class settlement as "fair," the Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement," *Isby*, 75 F.3d at 1199 (citing *Armstrong*, 616 F.2d at 315), and has identified several factors for analyzing whether a class action settlement should be given final approval including: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997) (affirming finding that settlement was fair under similar six-factor analysis.); *Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 818 (N.D. Ill. 2002) (same).

The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) ("The district court should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights"); *Isby*, 75 F.3d at 1196-97 (declining objecting members' invitation to determine merits of legal issues that remain unresolved, stating this was a "necessary consequence of settlement"). Instead, a court's inquiry should be "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Id.* at 1196.

Likewise, the Seventh Circuit has urged district courts to be mindful that "[t]he essence of settlement is compromise," so "the parties to a settlement will not be heard to complain that the

- 15 -

relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *Hiram Walker*, 768 F.2d at 889 (emphasis original). Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Analysis of all these factors weighs in favor of finally approving the Settlement.

### A. Strength Of The Case Measured Against The Settlement.

"The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong*, 773 F.3d at 864. Plaintiff alleges that PTL violated the TCPA by sending facsimile advertisements to unwilling recipients with deficient opt-out notices. Plaintiff contends that PTL did so without prior express invitation or permission and without any established business relationship. The Complaint thus alleges that Plaintiff and the Class are entitled to statutory or actual damages, injunctive relief, and other equitable relief this Court deems appropriate.

PTL denies liability and contends that it has a number of affirmative defenses that would defeat Plaintiff's claim on both substantive and procedural grounds. Primarily, PTL contends that the faxes it sent did not constitute advertisements within the meaning of the TCPA. (Dkt. No. 12.) If PTL was successful on this basis alone, its conduct would not be a violation of the TCPA. *See* 47 U.S.C. § 227(a)(5) (defining advertisement as "any material advertising the commercial availability or quality of any property, goods, or services.").[6] Additionally, PTL asserted numerous

---

[6] *See Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc.,* 526 F. Supp. 2d 851, 853-53 (N.D. Ill. 2007) (fax inviting business owners to participate in research discussion on new healthcare program sponsored by chamber of commerce was not advertisement; although plaintiff compared fax to pre-textual notification about free seminar where sender's products were promoted, fax was not an "indiscriminate, open ended invitation" to do business with defendant, but instead indicated that individuals interested in participating in research study must be qualified and would be subject to pre-screening); *Physician's Healthsource, Inc. v. MultiPlan Servs. Corp.,* No. 12-11693-GAO, 2013 WL 5299134, at *2 (D. Mass. Sept. 18, 2013)

affirmative defenses as part of its initial answer and still asserts, in its amended answer, that the claims of the class are barred by the applicable statute of limitations. (Dkt. No. 17; Dkt. No. 27 at 11.) The Class would not be able to recover anything if PTL succeeded with its affirmative defense in entirety. Clearly, one of the factors to be considered as to the fairness of a class action settlement is PTL's willingness and ability to mount such a vigorous defense.

As explained above, the Settlement allows Settlement Class Members to receive direct, monetary relief. While Plaintiff believes that its claim for maximum statutory damages under the TCPA is strong, Plaintiff is also aware of the inherent risks and costs of continuing with complex litigation of this nature. If PTL were to prevail on its asserted defenses, Settlement Class Members, including Plaintiff, would receive no relief *at all.* Given this possibility, a *pro rata* distribution of the Settlement Fund is a meaningful achievement.[7] *Chase Bank,* 2016 WL 806549, at *7 ("The actual recovery per *claimant* is approximately $52.50. As some objectors note . . . that recovery is well below the $500 statutory recovery available for each call or text. However, the recovery falls well within the range of recoveries in other recent TCPA class actions.") (emphasis original) (internal citations omitted); *Walgreen,* 311 F.R.D. at 489 ("It is true that thirty dollars per claimant

---

("Based on the four corners of the facsimile, there is no overt advertising . . . nor is there any enticement that would be construed as pretext to advertise commercial products or services."); *Friedman v. Torchmark Corp.,* No. 12-CV-2837-IEG (BGS), 2013 WL 1629084, at *4 (S.D. Cal. Apr. 16, 2013) ("Defendant's message was not aimed at encouraging Plaintiff to engage in future commercial transaction with Defendant to purchase its goods. Rather, Defendant's message informed Plaintiff about a recruiting webinar that could have resulted in an opportunity to sell Defendant's goods, which is akin to an offer of employment."); *NB Indus. v. Wells Fargo & Co.,* No. C 10-03203 LB, 2010 WL 4939970, at *9-10 (N.D. Cal. Nov. 30, 2010) (faxes containing information and application relating to Asian-American business leadership award and banquet that was sponsored by the sender were not advertisements because they did not mention defendant's products); *Lutz Appellate Servs. Inc. v. Curry,* 859 F. Supp. 180, 181 (E.D. Pa. 1994) (fax about job openings at sender was not an advertisement).

[7] Plaintiff notes that, had all 893 Class Members submitted Approved Claims, the actual recovery *per claimant* would still be $55.63 ($49,678.65 / 893).

is substantially less than the $500 statutory recovery available for each unlawful phone call Walgreens allegedly made. But Kolinek winning at trial and securing complete recovery for all nine million class members is but one potentiality, and it is a dubious one at that."). Accordingly, the Settlement provides a tangible benefit to all those affected by PTL's alleged violation of the TCPA.

**B.      The Complexity, Length, And Expense Of Continued Litigation.**

Due to the nature of Plaintiff's case, trial will require the collection of evidence and witness testimony from across the country. Both Parties, for instance, would examine a number of PTL's current and former employees. PTL intends to assert a number of affirmative defenses that it contends bar Plaintiff's claim in whole or in part. PTL would present—and Plaintiff would necessarily attempt to rebut—evidence and testimony on whether: (a) PTL's faxes constitute an advertisement within the meaning of the TCPA; (b) individual Class Members provided prior express permission to receive such faxes, or had an existing business relationship with PTL; and (c) individual Class Members' claims are barred by the applicable statute of limitations. The uncertainty as to whether these affirmative defenses apply in this case creates substantial risk for both sides. Plaintiff and Class Counsel also recognize that the expense, duration, and complexity of protracted litigation would be substantial, and would require further briefing on numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses. Such substantial risks and expenses are otherwise avoidable if the Settlement is approved.

**C.      The Settlement Class' Reaction And Lack Of Opposition To The Settlement.**

Since this Court granted preliminary approval of the Settlement on April 4, 2016, of the approximately 893 Settlement Class Members, 42 individuals and entities have submitted claim

- 18 -

forms.[8] (Bertino Decl. ¶15.) The resultant claims-rate in this Settlement is approximately 4.7% (42 / 893). This claims-rate is easily in line with other recent TCPA class action settlements.[9]

Further, despite notice having reached an outstanding 93.96% of the Class, only *two* individuals or entities have opted out, and *zero* have objected to the Settlement. (Bertino Decl. ¶¶12-14.) The resultant opt-out percentage is *extremely low*, ***0.22396%*** (2 / 893), and the resultant objection percentage is, of course, ***zero***. Courts, including this one, routinely find "extremely low percentage[s] of opposition favor[] a finding that the settlement is fair, reasonable, and adequate." *Chase Bank,* 2016 WL 806549, at *9 (Feinerman, J.); *In re Capital One Tel. Consumer Prot. Litig.,* 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015) (Holderman, J.) (similar); *In re Sw. Airlines Voucher Litig.,* No. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (Kennelly, J.) (similar), *aff'd and modified on other grounds,* 799 F.3d 701 (7th Cir. 2015); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,* 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) (St. Eve, J.) (similar); *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (Pallmeyer, J.) (holding that the fact that "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlements."), *aff'd,* 267 F.3d 743 (7th Cir. 2001). Thus, this factor weights strongly in favor of final approval.

---

[8] Of the 42 claims submitted, 1 claim was submitted after the claim deadline of July 5, 2016. (Bertino Decl. ¶15.) Class Counsel recommends approving this claim.

[9] *See, e.g., In re Capital One,* 80 F. Supp. 3d at 786 (7.87% claims-rate); *Couser v. Comenity Bank,* No. 12CV2484-MMA-BGS, 2015 WL 5117082, at *7 (S.D. Cal. May 27, 2015) (7.70% claims-rate); *Allen v. JPMorgan Chase Bank, N.A.,* No. 13-cv-80285, Dkt. No. 98 at 2 (N.D. Ill. Oct. 21, 2015) (4.05% claims-rate); *Wilkins v. HSBC Bank Nevada, N.A.,* No. 14 C 190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (3.16% claims-rate); *Rose v. Bank of Am. Corp.,* No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *5 (N.D. Cal. Aug. 29, 2014) (2.95% claims-rate); *Walgreen,* 311 F.R.D. at 493 (2.51% claims-rate); *Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *1 (N.D. Cal. Apr. 15, 2015) (1.90% claims-rate); *Chase Bank,* 2016 WL 806549, at *3 (1.08% claims-rate); *Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.,* No. 3:14-CV-00645-ST, 2016 WL 54678, at *1 (D. Or. Jan. 5, 2016) (0.08% claims-rate).

### D.  Class Counsel's Opinion.

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586-87 (N.D. Ill. 2011). Here, Class Counsel has extensive experience in consumer class actions and complex litigation, and has settled (with court approval) numerous cases. (Siprut Decl. ¶21.) *In re Capital One,* 80 F. Supp. 3d at 792 (Holderman, J.) ("The court accepts that Class Counsel in this case are experienced litigators . . . and that they strongly support the settlement . . . this factor weighs in favor of approval."); *Walgreen*, 311 F.R.D. at 495 ("Class counsel in this case are highly experienced class action litigators who strongly support the proposed settlement. This factor weighs in favor of approval.").

Class Counsel believes that the Settlement confers substantial benefits upon the Settlement Class and meets the class-certification requirements of Rule 23. (Siprut Decl. ¶25.) Class Counsel estimates that the 42 Settlement Class Members that submitted claims will each receive approximately $1,182.82 – this represents an overwhelmingly positive payout in comparison to other recent TCPA settlements. Additionally, even if *all* 893 Settlement Class Members submitted claims, each Settlement Class Member would *still* receive $55.63. Class Counsel believes this is an outstanding result. Finally, the fairness and sufficiency of the Class relief is further demonstrated when weighed against PTL's anticipated defenses and the inherent risks and costs of litigation.

### E.  The Stage Of The Proceedings And The Amount Of Discovery Completed.

The last factor to be considered by the Court is the stage of the proceedings and the amount of discovery completed. Here, the Parties have engaged in extensive formal and informal discovery regarding the nature of the program described in PTL's faxes, and empirical data concerning the Class. Nevertheless, the amount of *formal* discovery taken is not a prerequisite to a class action

settlement. Courts have noted that, "the label of 'discovery' [either formal or informal] is not what matters. Instead, the pertinent inquiry is what facts and information have been provided." *Schulte*, 805 F. Supp. 2d at 587 (internal citation omitted); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 2010) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted.") (emphasis omitted); *Chase Bank*, 2016 WL 806549, at *9 (Feinerman, J.) ("Although this settlement-directed discovery is not identical to the full merits discovery that would enable counsel to better evaluate the merits of plaintiffs' claims, extensive formal discovery would entail substantial cost and might not have placed the parties in a materially better position than they are now to determine an appropriate settlement value.") (internal citations and quotations omitted); MANUAL FOR COMPLEX LITIGATION (Fourth), § 11.423 (2004) (noting that informal discovery is a recognized method of minimizing the cost, delay and burden associated with formal discovery).

Here, ample information and data was exchanged. Class Counsel requested, and PTL provided, information concerning the identities & size of the Class, the nature of the program described in the faxes, and empirical data concerning the number of faxes sent. Furthermore, Class Counsel has engaged in third-party discovery to further determine the identities and size of the Class. Class Counsel was thus well-equipped not just to make the decision whether to settle on behalf of the Class, but also what the terms of such settlement would be. (Siprut Decl. ¶¶13-15.)

## IV.    THE COURT-APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS.

The Parties effectuated class notice in a reasonable manner that was calculated to reach as many Settlement Class Members as possible who would be bound by the Settlement. In this case, the Settlement Administration—Heffler Claims Group, LLC—provided direct notice by mail and

fax to the Class Members. (Bertino Decl. ¶¶8-9.)

The notice plan approved by the Court on April 4, 2016, provided the best notice practicable to apprise the Settlement Class of the pendency of this action. Class Members only needed to fill-out a one-page, claim form that asks for basic information. *See Walgreen*, 311 F.R.D. at 499 ("[T]he claim form used in this case is short and direct."). The notice afforded them an opportunity to opt out of or present any objections to this Settlement, and complied fully with due process, as already found in the Preliminary Approval Order. (Dkt. No. 68 at 13.)

As of September 26, 2016, based on the number of "undeliverable" mail and fax notices, only approximately 6.04% of the Settlement Class did not receive direct notice. (Bertino Decl. ¶12.) Hence, approximately ***93.96%*** of the Settlement Class did receive notice. (*Id.*) This is an outstanding result. Accordingly, the form and method of notice given to class members satisfies all the legal requirements of Rule 23, as well as the constitutional due process requirements.

## <u>CONCLUSION</u>

For the reasons set forth above, Class Counsel requests that the Court enter an order granting final approval of the Settlement.

Dated: September 28, 2016

Respectfully submitted,

By: */s/ Joseph J. Siprut*

Joseph J. Siprut
*jsiprut@siprut.com*
Ke Liu
*kliu@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342
**www.siprut.com**

*Counsel for Plaintiff*
*and the Settlement Class*

- 23 -

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing

**Plaintiff's Motion For Final Approval Of Class Action Settlement** was filed this 28th day of

September 2016 via the electronic filing system of the Northern District of Illinois, which will

automatically serve all counsel of record.


          */s/ Joseph J. Siprut*